700 P.2d 1335

**William D. BOONE, surviving husband of Deborah Jean Boone, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and Marilyn A. Riddel, a judge thereof; Robert W. Croddy, M.D., and Phoenix Anesthesiologists Group, Ltd., an Arizona corporation, Real Parties in Interest, Respondents.**

No. 17700–SA.

Supreme Court of Arizona, En Banc.

March 25, 1985.

Reconsideration Denied April 30, 1985.

Ely, Bettini & Ulman by J. Wayne Tur-
ley, Herbert L. Ely, Phoenix, for petitioner.

Snell & Wilmer by Barry D. Halpern, Joseph A. Kendhammer, Phoenix, for respondents.

FELDMAN, Justice.

William D. Boone (plaintiff) petitions us to grant relief by special action from the order of the respondent trial judge dismissing the complaint in a wrongful death action. In Arizona practice, relief by "special action" replaces relief "previously obtained" by writs of certiorari, mandamus, or prohibition. Rule 1, Ariz.R.P.Sp.Act., 17A A.R.S. Plaintiff claims that, in dismissing the complaint, the trial court proceeded in excess of its legal authority, acted in an arbitrary and capricious manner, or abused its discretion, so that special action relief is proper under Rules 3(b) and (c) of the Rules of Procedure for Special Actions. Plaintiff also alleges that his remedy by appeal is inadequate. We agree and accept jurisdiction, *id.*, Rule 7(c), pursuant to the authority vested in us by Article 6, § 5(4) of the Arizona Constitution.

The operative (and uncontroverted) facts establish the following: Mrs. Boone had minor surgery at Good Samaritan Hospital in Phoenix on July 23, 1980, to correct a condition relating to infertility. She was attended by a surgeon, a resident who evidently assisted the surgeon, and Dr. Croddy, an anesthesiologist (defendant). During the surgery, defendant administered curare, a paralysis-causing agent which requires that the patient be artificially respirated and drugs administered to reverse the paralysis. Mrs. Boone went into respiratory arrest after surgery and died.

The Arizona statute of limitations for medical malpractice actions is three years. A.R.S. § 12–564(A). The statute would have expired on July 23, 1983. It was not until June 1983 that plaintiff consulted a lawyer, Mr. Jerry Cochran of the law firm of Burch & Cracchiolo, regarding the possibility of filing a claim in connection with his wife's death. Mr. Cochran interviewed the plaintiff, and was told that plaintiff had waited to seek legal assistance because of the adverse "effect [of] the tragedy of his wife's death on him personally." Mr. Cochran's affidavit states that he received an account of the circumstances surrounding that death "following minor surgery," and "immediately undertook to do all investigation possible to obtain medical records and learn the identities of the potential defendants prior to the expiration" of the statute. The affidavit is sparse regarding the investigation, but no contention is made here, nor was any made in the trial court, that Mr. Cochran was less than diligent. In any event, Cochran avers that, based upon the facts which he obtained and his "knowledge and experience as an attorney," he formed "a good faith belief that one or more or all of the physicians and health care providers who provided care for Mrs. Boone" negligently caused her death. On the basis of that belief, Cochran filed a complaint on plaintiff's behalf, naming as defendants the hospital, the surgeon, the assistant surgeon, and "John Doe, M.D.," the alleged anesthesiologist. On July 15, the complaint was amended to insert defendant's name in place of John Doe as the attending anesthesiologist.

Cochran then learned that he had a potential conflict. He assisted in finding other lawyers to represent plaintiff and on July 22, 1983, the law firm of Ely, Bettini and Ulman was substituted as counsel of record. In his uncontroverted affidavit, Mr. Ely avers that he first met with plaintiff on July 22, that he took "an account of circumstances of [Boone's] wife's untimely death following fertility surgery," and that he reviewed the medical records which were then available, applied his "knowledge and experience as an attorney in medical malpractice claims," and formed a "good faith belief" that one or more of the health care providers had fallen below the standard of care. On this basis, Mr. Ely "assumed representation of Mr. Boone on July 22, 1983." Mr. Ely states that he had "no opportunity to discuss Mr. Boone's case with medical experts prior to the expiration of the statute of limitation."

The hospital, surgeon, and assistant surgeon were served with the complaint soon

after Mr. Ely was substituted as counsel for Mr. Boone. Defendant was not served, though he was evidently aware that he had been named in the complaint and, in fact, there were discussions between Mr. Ely and defendant's counsel with regard to the evidence, or lack thereof, against defendant.

Almost a year later, in June 1984, a physician who was being interviewed regarding the treatment rendered by the surgeon said that the records showed some evidence that the anesthesiologist had fallen below the proper standard of care. This physician declined to give a definite opinion because he was not an anesthesiologist. A memorandum with this information was sent to Mr. Ely and seen by him on July 2, 1984. Mr. Ely avers that this was the first time that a consulting physician had indicated any negligence on the part of defendant. With this information, Ely consulted "in confidence" with a board certified anesthesiologist who "did not and does not want to become involved in this matter," but who believed that defendant had given the patient an overdose of curare and had not properly reversed the dose. After obtaining this opinion, Ely discussed the matter with plaintiff, and they decided to serve defendant. A "courtesy call was placed" to defendant's attorney to advise him of the imminent service.[1]

Shortly after serving defendant, plaintiff obtained testimony from a board certified anesthesiologist who is chairman of the department of anesthesiology at a local hospital. This expert states by affidavit that defendant fell below the standard of care in prescribing the amount of curare and in failing to properly reverse its effects. He further believes that the surgeon, assistant surgeon, and hospital personnel fell below the standard of care in failing to react to Mrs. Boone's post-operative symptoms, and that her death was caused by the combined negligence of all the defendants.

Notwithstanding the availability of this witness, defendant filed various motions for dismissal and summary judgment. The trial judge's minute entry order of August 9, 1984, specifically outlines the basis for granting the motion to dismiss. The order states: 1) that at the time the complaint was filed counsel had no specific knowledge that defendant had committed malpractice, 2) that counsel sued all doctors in attendance "to beat the statute of limitations," and 3) that even though it was "to [counsel's] credit" that he withheld service until evidence was obtained, he had nevertheless put defendant's name "on public record as having been sued for malpractice" by filing at a time when counsel "had *nothing* to back up [the] claim." (Emphasis in original.) The trial judge held that this procedure violated Rule 11(a) of the Rules of Civil Procedure because it was an attempt to avoid the bar of the statute of limitations by "filing prematurely and waiting to serve."

■ The facts and the history of the case therefore present a clear question. May a well-founded action be dismissed under Rule 11(a) because, at the time the complaint was filed, plaintiff's counsel had no specific evidence that the defendant had fallen below the applicable standard of care? We accepted jurisdiction because we believe this to be an important issue of first impression in the state of Arizona and because it is a clear question of law involving the standards demanded of counsel. *See King v. Superior Court,* 138 Ariz. 147, 149, 673 P.2d 787, 789 (1983); *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 591, 667 P.2d 1304, 1306 (1983). The remedy by appeal is inadequate because the system will be put to the risk of trying the case twice—once against the hospital and the surgeons, and then again if there is a reversal on appeal against the anesthesiologist. The danger for the plaintiff is greater, for he may lose both trials to the "empty chair." Special action relief is the

---

1. In Arizona, the action abates unless service is made within one year of filing. Rule 6(f), Ariz. R.Civ.P., 16 A.R.S. Defendant and his corporate employer were served within this one year "grace period" and no question of abatement is presented.

only practical way in which justice may be achieved. *King v. Superior Court, supra.*

We note, also, that there is no indication or claim that plaintiff himself has been guilty of any improper conduct. As far as this record shows, plaintiff brought his claim to a reputable lawyer approximately one month before the statute of limitations was due to expire, left it in the lawyer's hands, and has followed advice of counsel at every step thereafter. However, the sanction for the alleged violation of Rule 11 has been visited upon the client, not the lawyer. That punishment consists of dismissal of a claim at a time when it cannot be refiled; the claim is neither frivolous nor sham, but one which at this stage of the proceedings must be taken as well-founded.

### THE PURPOSE OF RULE 11

At the time of the events in this case, the relevant portion of Rule 11(a) read as follows:

> The signature of an attorney constitutes a certificate by him that he has read the pleading, that *to the best of his knowledge, information, and belief there is good ground to support it*, and that it is not interposed for delay. *If a pleading ... is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false* and the action may proceed as though the pleading had not been served. For a willful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

Rule 11(a), Ariz.R.Civ.P., 16 A.R.S. (emphasis supplied).

■ Rule 11 was "designed to encourage honesty in the bar when bringing and defending actions [and] ought to be employed only in those rare cases in which an attorney deliberately presses an unfounded claim or defense." 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1334, at 503 (1969). Thus, as a general rule, motions to dismiss or to strike pleadings "as sham under Rule 11 should not be granted if there is any possibility that the party can prove his case." *Id.* at 502. Allegations of factual or legal insufficiency should not be handled under Rule 11, but by motion to dismiss, to strike, for the more definite statement, or for summary judgment. *Id.* at 503; Advisory Committee Note of 1983 to Amended Rule 11, 97 F.R.D. 165, 198 (1983). Thus, the provisions in Rule 11 for striking pleadings as "sham and false" if they were signed "with intent to defeat the purpose of this rule" will be appropriate only in those cases where the party or counsel intended some end or use not recognized as legitimate in our system of justice. *See,* Risinger, *Honesty in Pleading and Its Enforcement: Some "Striking" Problems with Federal Rule of Civil Procedure 11,* 61 Minn.L. Rev. 1, 16–17 (1976–77) (describing the history of the rule and its evolution from the common law motion to strike—a motion which required a showing of both improper motive and falsity). We proceed, therefore, to examine the actions of plaintiff's counsel in light of the objectives of the rule.

### RESPONSIBILITY OF COUNSEL UNDER RULE 11

■ The objectives sought by Rule 11 and the wording of the rule primarily "place a moral obligation" upon the lawyer "to satisfy himself that there are good grounds for the action or defense." *C. Wright & A. Miller, supra,* § 1333, at 499. However, neither the rule nor the cases decided under it provide any clear direction with respect to the extent to which an attorney must investigate before filing a pleading. *Id.* at 499–500. The few cases interpreting the rule are directed to situations in which harassment was a "realistic threat," such as class actions or stockholders' derivative actions. *Id.* In recent years, however, courts have become more concerned with abusive litigation tactics and in some cases have attempted to impose a standard requiring a degree of prefiling investigation. *See* Baird, *Ballooning Toward a New Due Diligence for Litiga-*

*tors,* Ariz.B.J. 23 (Feb./Mar. 1985); Olson & McConnell, *Deterring and Defeating Frivolous and Abusive Litigation,* For The Defense 16 (Defense Res. Inst., Jan. 1985).

The subjective nature of the test was a serious problem with enforcement of Rule 11. As Olson & McConnell point out, to prove that the action was brought or defended for improper reason or purpose there must be "clear evidence" that a pleading of claim or defense was not colorable:

> A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established,* not whether such facts actually *had been established.*

Olson & McConnell, *supra,* at 17 (quoting *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (emphasis in originals).

Rule 11 was eventually amended with the goal of overcoming the difficulty of proving improper subjective intent. *Baird, supra,* at 23. The Arizona amendments were adopted on August 7, 1984 (just before the trial court's ruling in the case at bench), and became effective on November 1, 1984, while the special action was pending in this court. The relevant amendment states in pertinent part:

> The signature [on the pleading] of an attorney or party constitutes a certificate by him ... that to the best of his knowledge, information, and belief *formed after reasonable inquiry it is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

Rule 11(a) as amended, effective November 1, 1984 (emphasis added).

The purpose of the amendment was to give Rule 11 "more teeth," *Olson & McConnell, supra,* at 18, and to substitute a more stringent and focused standard for the requirement of "good ground to support the pleading." C. Wright & A. Miller, *supra,* § 1333, at 128; 2A J. Moore & J. Lucas, *Moore's Federal Practice,* § 11.-02[2], at 11–13 to 11–15 (2d ed. 1984); Advisory Committee Note, *supra,* 97 F.R.D. at 199.

In our view, the actions of counsel in the case at bench violate neither the "good faith" requirement of Rule 11(a) as it existed at the time of the events in question nor the more stringent requirements of the amended rule. We need not, therefore, concern ourselves with inquiring whether the amendment is to be applied retroactively or only prospectively.

## THE "OLD RULE"

Turning first to the "old rule," we think it clear that plaintiff need not establish the merits of the case at the time of filing, but need only have a subjective, good faith, or reasonable belief that there are grounds to support the complaint. *In re Ramada Inns Securities Litigation,* 550 F.Supp. 1127, 1134 (D.Del.1982); *see also In re Mid-Atlantic Toyota Anti-Trust Litigation,* 525 F.Supp. 1265 (D.Md.1981), *aff'd,* 704 F.2d 125 (4th Cir.1983); *Helfant v. Louisiana & Southern Life Insurance Co.,* 82 F.R.D. 53 (E.D.N.Y.1979). This, of course, does not mean that the attorney may file a claim or raise a defense based on nothing more than the fervent hope that prolonged discovery may reveal some basis for the claim or defense. Such a practice shows the absence of a subjective good faith belief and violates Rule 11. *Miller v.*

*Schweickart,* 413 F.Supp. 1059 (S.D.N.Y. 1976).

Defendant argues that joining, as defendants, everyone connected with the event is a violation of Rule 11 unless there is evidence against each of the persons named. This contention is based upon *Kinee v. Abraham Lincoln Federal Savings & Loan Association,* 365 F.Supp. 975 (E.D. Pa.1973). We agree with the result in *Kinee,* but find the case inapposite to the facts of the case at bench. In *Kinee,* plaintiffs wished to bring a class action against "escrow lenders." Rather than determining which firms in the area did business as "escrow lenders," plaintiffs' counsel simply sued every mortgage broker listed in the Philadelphia phone book, assuming that many of them would be in the escrow lending business and that discovery would determine which were appropriate defendants. The court properly held that the procedure violated Rule 11 and imposed sanctions short of dismissing the claims against the defendants who were appropriate.

■ The facts of the case at bar, however, show that plaintiff's counsel were concerned with the proper function of the judicial system. The client was interviewed, records were consulted, the existence of an untoward result was established, and the names of those directly involved with the fatal event were obtained. Efforts were made to save the defendant in question from the burden of litigation by withholding service until it was ascertained that there was actual evidence of a colorable claim against him. It is not contended that plaintiff or plaintiff's counsel had any intent to harass or coerce the defendant, use the threat of a claim as a means of extortion, or to inflict needless expense upon him. All of the facts actually support the opposite conclusion. Counsel's subjective belief that the preliminary investigation revealed an untoward result seems reasonable and properly supported. We hold, therefore, that there was no violation of Rule 11(a) as it read prior to the 1984 amendment.

## THE "NEW RULE"

■ The language of the amended rule stresses the need for some investigation on both facts and law to satisfy the "affirmative duty which the rule now imposes." 2A J. Moore & J. Lucas, *supra,* § 11.04[47], at 11–51. However, even under the new rule, the lawyer is not required to prepare a prima facie case for trial before filing the answer or complaint. Obviously, this is neither a possible nor a salutary objective. The lawyer is required to make reasonable efforts to determine that the claim or defense is not illusory, frivolous, unnecessary, or insubstantial. *Id.* What constitutes reasonable efforts must be determined in light of the situation existing, the facts known, the amount of time available for investigation, the need for reliance upon the client or others for obtaining facts, the plausibility of the claim, and other relevant factors. *Id.* § 11.02[2], at 11–12 and note 3 (citing Advisory Committee Note, *supra*).

■ Thus, even under the more stringent provisions of the recent revision to Rule 11(a), counsel is required only to make an investigation which is reasonable under the circumstances that exist at the time of filing the pleading. The new rule requires no more than a good faith belief, *formed on the basis of that reasonable investigation,* that a colorable claim exists. The rule is "not to be used to require [counsel] to offer proof of the [pleading] before discovery and before trial." *Chipanno v. Champion International Corporation,* 702 F.2d 827, 831 (9th Cir.1983).

■ We hold, therefore, that the amended version of Rule 11 is violated by the filing of a pleading when the party or counsel knew, or should have known by such investigation of fact and law as was reasonable and feasible under all the circumstances, that the claim or defense was insubstantial, groundless, frivolous, or otherwise unjustified. It is also violated by the filing of pleadings for an improper pur-

pose such as those intended to harass, coerce, extort, or delay. The merits of all such improper pleadings are to be dealt with under the appropriate rules designed to address such claims or defenses—Rule 16 (pretrial conferences), Rule 12 (dismissal for failure to state a claim, judgment on the pleadings, more definite statement, or striking for insufficient defense), or Rule 56 (summary judgment). C. Wright & A. Miller, *supra,* § 1333, at 500. In addition to action under the cited rules, the court may impose upon the offending attorney or party the sanctions provided under Rule 11, including the payment of costs, expenses *other than taxable costs,* and attorney's fees. These may be assessed against either counsel or the party, or both, as appropriate.[2] We know of no case, and none has been cited, which authorizes the dismissal or striking of a meritorious claim or defense simply because at the time the pleading was filed the attorney had not yet assembled evidence sufficient to make a prima facie case or defense.[3] Thus, the trial court's order dismissing the claim against defendant was supported by neither the facts of the case nor by the law, and was an abuse of discretion. *City of Phoenix v. Geyler,* 144 Ariz. 323, 697 P.2d 1073 (1985).

Petitioner's prayer for relief is granted. The trial court's orders of August 9 and August 20, 1984, are vacated; any subsequent judgment entered on those orders is also vacated.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

**2.** It may be also that violation of Rule 11 may provide a basis for bar discipline or civil liability for malpractice, abuse of process, or malicious prosecution. *See* Baird, *supra,* at 25 (citing Zilly, *Recent Development in Legal Malpractice Litigation,* 6 Litigation 8, 13 (1979)). We do not reach this question.

**3.** The vice in the trial court's ruling becomes patent if we turn the facts around. Let us suppose that a complaint reaches defense counsel on the last day for answer, leaving him with no opportunity for investigation except to talk to whoever might be available at the last minute and file an answer in order to avoid default. Defense counsel does what he can, and files an answer. Plaintiff's counsel thereafter moves to strike the answer under Rule 11, claiming that the answer was sham because, at the time it was filed, defense counsel had neither expert opinion nor evidence available on which to base all of the denials and affirmative defenses raised in the answer. Is such a motion to be granted, even though at the time the motion is made, the defense appears to be well-founded?