726 P.2d 231

**John TIFFANY, a minor, By and Through his next best friend and guardian ad litem, Herbert E. TIFFANY, his father, Plaintiff-Appellee,**

v.

**The ARIZONA INTERSCHOLASTIC ASSOCIATION, INC., an Arizona corporation, Defendant-Appellant.**

**No. 1 CA–CIV 8359.**

Court of Appeals of Arizona, Division 1, Department A.

June 12, 1986.

Review Denied Oct. 7, 1986.

Mesch, Clark & Rothschild, P.C. by Douglas H. Clark, Jr. and Jonathan Rothschild, Tucson, for plaintiff-appellee.

Mark Mignella, Phoenix, for defendant-appellant.

## OPINION

MEYERSON, Judge.

Does a high school student have a constitutional right to participate in interscholastic athletic competition during his senior year in high school? This is the primary question raised in this appeal. As explained more fully herein, we hold that defendant-appellant Arizona Interscholastic Association, Inc. (AIA) did not violate the due process clause of the fourteenth amendment when it refused to grant plaintiff-appellee John Tiffany a hardship waiver from its nineteen-year-old eligibility rule. We concur with the trial court, however, that AIA acted unlawfully by failing to follow its own bylaws in considering the request for the waiver.

## I. FACTS

Tiffany began his senior year at St. Mary's High School in Phoenix during the 1983–84 school term. He had been held back in kindergarten and first grade because of a learning disability. Thus, he turned nineteen years of age on August 5, 1983, the month before his senior year would begin. Tiffany had participated in athletics throughout grade school and during high school. He wanted to participate in athletic competition during his senior year.

AIA is a voluntary association composed of all public and most private high schools in Arizona. AIA formulates and promulgates rules and regulations pertaining to, among other things, interscholastic athletic competition among its members. Under AIA's bylaws, if a student turns nineteen before September 1 of the school year, he is not eligible to participate in interscholastic athletics. AIA bylaws provide, however, that:

> The Executive Board in individual cases may, at its discretion and upon such terms and conditions as it may impose, waive or modify any eligibility rule when in its opinion there are circumstances beyond the control of the student or parent whereby enforcement of the rule would work an undue hardship on the student....

The parties have stipulated that the decision to hold Tiffany back in the early grades was made by his teachers and

school administrators with his parents' approval. AIA does not contest that these circumstances were beyond the control of Tiffany and his parents.

At a hearing before the Executive Board of AIA, Tiffany presented evidence that he very much enjoyed his participation in interscholastic athletics, the friendship of those with whom he would compete, and the benefits from the discipline and regulation involved in playing varsity athletics. Tiffany indicated to the Executive Board that his motivation in studying came from the fact that in order to be eligible for interscholastic athletics a certain grade point average must be maintained. The Executive Board denied the request for the waiver. It is agreed by the parties that AIA has a policy of not making any exceptions to the nineteen-year-old eligibility rule.

Tiffany subsequently filed a complaint requesting that AIA be enjoined from disqualifying him from interscholastic athletic competition. He requested that AIA's actions be declared unconstitutional as a denial of due process. The trial court granted a preliminary injunction allowing Tiffany to play during the 1983–84 school year. Final judgment was entered in 1985. Because Tiffany requested attorney's fees, the trial court determined that the controversy was not moot.

The trial court held that AIA's Executive Board acted "unreasonably, capriciously and arbitrarily" when it failed to exercise its discretion in considering Tiffany's request for a waiver. The trial court also ruled that Tiffany possessed a "sufficient liberty or property interest or personal stake in participating in high school athletics" such that AIA's actions violated his constitutional rights. Tiffany was awarded attorney's fees in the amount of $2,500 pursuant to 42 U.S.C. § 1988. AIA has filed this appeal from that judgment. In order to determine whether the trial court could properly award attorney's fees to Tiffany pursuant to 42 U.S.C. § 1988, we must first decide whether the trial court

correctly found that AIA violated Tiffany's constitutional rights.

## II. CONSTITUTIONAL CLAIMS

To succeed in an action under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under color of law to deprive the plaintiff of a right, privilege or immunity secured by the constitution or laws of the United States. It is uncontested that AIA's actions are under color of law within the meaning of 42 U.S.C. § 1983. *Clark v. Arizona Interscholastic Ass'n,* 695 F.2d 1126, 1128 (9th Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). AIA disputes, however, that its conduct in this case deprived Tiffany of any interest cognizable under this statute.

In order to decide whether Tiffany's exclusion from interscholastic athletics during his senior year in high school violated due process (and therefore 42 U.S.C. § 1983), it first must be determined whether Tiffany had any property or liberty interest in participating in high school sports during the 1983–84 school year. The beginning point in analyzing this constitutional issue is the decision of the United States Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In *Goss,* the Supreme Court held that a school could not suspend a student for ten days without insuring due process safeguards. The Court reasoned that a "State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574, 95 S.Ct. at 736.

'[E]ducation is perhaps the most important function of state and local governments,' and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for ten days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty inter-

est in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

*Id.* at 576, 95 S.Ct. at 737 (citation omitted). We now proceed to apply the ruling of *Goss* to the case before us.[1]

■ Most courts which have considered this issue have declined to hold that participation in a single year of high school athletic competition rises to the level of a constitutionally protectable property interest.[2] For example, in *Albach v. Odle,* 531 F.2d 983 (10th Cir.1976), the plaintiff challenged a rule automatically barring from interscholastic high school athletic competition for one year any student who transferred from his home district to a boarding school or from a boarding school to his home district. The court found that the ruling in *Goss v. Lopez* was limited to the "educational process." In language which has been cited repeatedly by other courts, the court declared:

> The educational process is a broad and comprehensive concept with a variable and indefinite meaning. It is not limited to classroom attendance but includes innumerable separate components, such as participation in athletic activity and participation in school clubs and social groups, which combine to provide an atmosphere of intellectual and moral advancement. We do not read *Goss* to establish a property interest subject to constitutional protection in each of these separate components.

*Id.* at 985. In *Karmanos v. Baker,* 617 F.Supp. 809 (E.D.Mich.1985), the court concluded that the plaintiff had not demonstrated that he had a property interest in participating in intercollegiate hockey. The court noted that the plaintiff had not alleged any acts which deprived him of educational or vocational opportunities other than the opportunity to play hockey.

Finally, in *Kulovitz v. Illinois High School Ass'n,* 462 F.Supp. 875 (N.D.Ill. 1978), the court rejected the plaintiff's constitutional claim arising out of his exclusion from participation in high school athletics during a single school year. The court held that "participation in interscholastic athletics is not a constitutionally protected civil right." *Id.* at 877. *E.g., Walsh v. Louisiana High Sch. Athletic Ass'n,* 616 F.2d 152, 159–60 (5th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Menke v. Ohio High School Athletic Ass'n,* 2 Ohio App.3d 244, 441 N.E.2d 620 (1981); *Whipple v. Oregon School Activities Ass'n,* 52 Or.App. 419, 629 P.2d 384 (1981); *cf. Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1352–53 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

Under certain limited circumstances, however, courts have found that participation in interscholastic sports rises to the level of a constitutionally protected property interest. For example, in *Boyd v. Board of Directors,* 612 F.Supp. 86 (E.D. Ark.1985), the court held that a student could not be suspended from the high school football team without procedural

---

1. Tiffany places a great deal of reliance on *Quimby v. School Dist. No. 21,* 10 Ariz.App. 69, 455 P.2d 1019 (1969). The court in *Quimby* upheld an AIA eligibility rule excluding the plaintiff from interscholastic activities for one year because he was not living with his natural parents and his guardianship did not meet AIA requirements. Without holding AIA's actions to be state action under 42 U.S.C. § 1983, the court nevertheless concluded that the AIA rule could be challenged under the equal protection clause of the Arizona and federal constitutions. Tiffany has made no equal protection argument on appeal.

2. Unlike *Goss v. Lopez,* no liberty interest is implicated here. In *Goss,* the liberty interest arose from the damage to the student's reputation because the suspension was based on misconduct. Because Tiffany suffered no injury to his reputation, *see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), by virtue of AIA's ruling excluding him from high school sports, no constitutionally protected liberty interest was infringed. *But see Kite v. Marshall,* 454 F.Supp. 1347 (S.D.Tex.1978) (rule prohibiting high school basketball player from attending one week "Superstars' Camp" invaded parents' liberty interest in assisting son to develop his talent to its fullest potential).

due process of law protections. The court found that the plaintiff-student was an outstanding athlete and that the 1983 season was his last opportunity to participate in football at the high school level. The testimony indicated that participation in high school sports was "vital and indispensable to a college scholarship and, in essence, a college education." *Id.* at 93. The court found that the plaintiff's continued status on the team was "very important" to his "development educationally and economically in the future." *Id.* Accordingly, the court found that his participation in interscholastic athletics must be deemed a property interest protected by the due process clause of the fourteenth amendment. *See Justice v. National Collegiate Athletic Ass'n,* 577 F.Supp. 356, 363–69 (D.Ariz. 1983) (where students were not deprived of scholarships or right to participate in intercollegiate athletics, exclusion from postseason and televised athletic contests did not rise to property interest).

In *Florida High School Activities Ass'n, Inc. v. Bryant,* 313 So.2d 57 (Fla.Dist.Ct. App.1975), the court affirmed the trial court which ordered the defendant to allow the plaintiff to participate in athletics during the 1974–75 school year. Although the court did not express its ruling in due process terms, it accepted the trial court's finding that basketball was an important and vital part of the plaintiff's life " 'providing an impetus to his general scholastic and social development and rehabilitation from his prior problems as a juvenile delinquent.' " *Id.* at 57.

■ As the above cases demonstrate, in the realm of constitutional law, there are very few absolutes. We are persuaded that under certain circumstances a high school student can properly establish an entitlement to due process protection in connection with a suspension or exclusion from high school athletics. We believe that an appropriate extension of the holding in *Goss v. Lopez* was expressed by the court in *Pegram v. Nelson,* 469 F.Supp. 1134 (M.D.N.C.1979). In that case, a high school student was suspended from school

for ten days and was also excluded from after-school activities for a period of four months. The court acknowledged that the "opportunity to participate in extracurricular activities is not, by and in itself, a property interest." *Id.* at 1139. The court recognized, however, that:

> *Total exclusion* from participation in that part of the educational process designated as extracurricular activities for a *lengthy period of time* could, depending upon the particular circumstances, be a sufficient deprivation to implicate due process.

*Id.* at 1140.

■ It is not necessary in this case to define the precise parameters of the circumstances under which due process must be afforded to a student excluded from high school athletics. This is so because Tiffany has not asserted any cognizable interest beyond his claim to mere participation in one year of interscholastic sports. Tiffany argues that he very much enjoys his participation in athletics, the friendship of those that he competes with and the benefit he derives from the discipline and regulation involved in playing varsity sports. Such interests, albeit important to him, simply do not rise to the level of constitutional magnitude necessary to invoke the protection of the due process clause. We likewise conclude that the scholastic benefit derived from the incentive to maintain a certain grade point average to remain eligible for athletic competition is also an interest which is outside the scope of constitutional protection. Unlike the "deprivation of a previously granted scholarship [which] would invoke the protections of procedural due process," *Colorado Seminary v. National Collegiate Athletic Ass'n,* 417 F.Supp. 885, 895 (D.Colo.1976), *aff'd,* 570 F.2d 320 (10th Cir. 1978), the educational stimulus Tiffany claims to derive from athletic participation is, in constitutional terms, a "mere subjective 'expectation,'" *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972) and not protected by procedural due process. In short, Tiffa-

ny has failed to demonstrate the type of serious damage to his "later opportunities for higher education and employment," *Goss v. Lopez,* 419 U.S. at 575, 95 S.Ct. at 736, which would raise his interest in interscholastic athletics to a level warranting the safeguards of the due process clause.

## III. FAILURE TO EXERCISE DISCRETION

 Although we reject Tiffany's constitutional claim, we sustain the trial court's ruling that the Executive Board of AIA acted unlawfully when it failed to exercise its discretion at the eligibility hearing. As noted above, despite the fact that AIA's bylaws specifically provide that its Executive Board will exercise discretion in considering hardship waivers to its eligibility rules, it is undisputed that the Executive Board has adopted a policy of not making any exceptions to the nineteen-year-old eligibility requirement.

It is hornbook law that an administrative board must follow its own rules and regulations. *E.g., Gibbons v. Arizona Corporation Comm'n,* 95 Ariz. 343, 390 P.2d 582 (1964); *George v. Arizona Corporation Comm'n,* 83 Ariz. 387, 322 P.2d 369 (1958). An administrative agency's failure to follow its own rules and regulations does not create a constitutional due process right on behalf of a party who suffers some wrong at the hands of the administrative body. *See Board of Curators v. Horowitz,* 435 U.S. 78, 92, 98 S.Ct. 948, 956, 55 L.Ed.2d 124, 136 (1978). Rather, the obligation of such a body to follow its own rules and regulations is founded in principles of administrative law. B. Schwartz, *Administrative Law* § 5.2 at 204 (2d ed. 1984).

In Arizona, the procedure by which one can compel an administrative board to exercise its discretion is through the filing of a mandamus, *Eastman v. Southworth,* 87 Ariz. 394, 351 P.2d 992 (1960), now a special action. Rule 1, Rules of Procedure for Special Actions; *see* A.R.S. § 12–2021. Although Tiffany's complaint was not denominated a special action, the record of the trial court proceedings reflects that the mandamus issue was implicitly tried by the parties. We hold that the trial court was correct in concluding that the Executive Board of AIA acted "unreasonably, capriciously and arbitrarily" when it failed to exercise its discretion in considering Tiffany's request for a waiver.

## IV. ATTORNEY'S FEES

The trial court awarded attorney's fees to Tiffany pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. To recover fees under this statute, a party must prevail in an action under certain civil rights statutes, including 42 U.S.C. § 1983. Because we have held that Tiffany has not established the deprivation of a right protected under 42 U.S.C. § 1983, Tiffany is not entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988. This is true even though Tiffany prevailed on the related state mandamus claim. *Luria Bros. & Co. v. Allen,* 672 F.2d 347, 356–58 (3d Cir.1982).

Affirmed in part, reversed in part.

GREER, P.J., and KLEINSCHMIDT, J., concur.