761 P.2d 145

**Leo L. BARROW, a married man, and Peter B. Keller, Plaintiff/Appellants,**

**v.**

**ARIZONA BOARD OF REGENTS, a body corporate under the laws of Arizona; John Schaefer, a married man; Albert Weaver, a married man; Lee B. Jones, a married man; Paul Rosenblatt, a married man; Gilbert E. Evans, a married man, Defendants/Appellees.**

**No. 2 CA–CV 87–0121.**

Court of Appeals of Arizona, Division 2, Department B.

March 24, 1988.

Review Denied Oct. 4, 1988.*

---

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Glicksman & Awerkamp, P.C. by Elliot Glicksman, Tucson, for plaintiff/appellant Barrow.

O'Dowd, Burke & Lundquist, P.C. by Bruce A. Burke, Tucson, for appellant Keller.

University of Arizona by Elizabeth A. Buchanan, Tucson, for defendant/appellee Arizona Bd. of Regents.

DeConcini McDonald Brammer Yetwin Lacy & Zimmerman, P.C. by John R. Mc-Donald, Tucson, for defendants/appellees

Schaefer, Weaver, Jones, Rosenblatt and Evans.

## OPINION

FERNANDEZ, Judge.

Appellant Leo L. Barrow appeals from the affirmance of the administrative decision which suspended him from his University of Arizona professorship for six months and from the granting of summary judgment in favor of appellees Schaefer, Weaver, Jones, Rosenblatt and Evans on Barrow's causes of action for intentional interference with contract and violation of 42 U.S.C. § 1983. Appellant Peter Keller appeals from the order that he is jointly responsible for a portion of the attorney's fee award entered in favor of the individual appellees. We affirm in part and reverse in part.

Barrow is a tenured professor of Spanish and Portuguese. In April 1982, a university trial board was convened to hear charges brought under the university Code of Conduct that Barrow was guilty of disorderly conduct, that he unlawfully possessed a narcotic drug and that he had violated a state or federal criminal law. The charges arose out of complaints by several students that Barrow had served cookies containing marijuana to two of his classes, one held in November 1979 and the other in December 1980. The trial board found him guilty of all charges and recommended that he be censured. Barrow appealed the decision to the University Review and Advisory Board, which recommended imposition of a penalty more severe than censure. Then-president Schaefer recommended to the Board of Regents that Barrow be dismissed from his position.

At the final step of the administrative review process, the Board of Regents dismissed the disorderly conduct charges, dismissed all charges arising out of the November 1979 incident, and affirmed the findings that Barrow was guilty of possessing a narcotic drug and that he had violated a state or federal criminal law, both of which arose out of the December 1980 incident. The board ordered Barrow suspended from his position for 180 days beginning June 24, 1982. The suspension period was completed in early 1983.

Barrow filed his complaint on July 30, 1982. Count one sought review of the administrative decision. Count two was for breach of contract against the Board of Regents based on Barrow's alleged contractual right to have the charges heard by the Committee on Academic Freedom and Tenure rather than under the Code of Conduct. Count three alleged that the individual appellees interfered with Barrow's contractual right to have a hearing before the Committee on Academic Freedom and Tenure, and count four alleged that the individual appellees violated his civil rights under 42 U.S.C. § 1983 by depriving him of his tenured professorship rights without due process and by chilling the exercise of his First Amendment right to teach his classes as he saw fit.

Count two was dismissed by Barrow before an answer was filed. In August 1986, the individual appellees' summary judgment motion on counts three and four was granted. The court later awarded those appellees attorney's fees of $22,560.50 and found that Barrow's trial attorney, Peter Keller, was jointly responsible for $5,933.50 of the award pursuant to Rule 11(a), Ariz. R.Civ.P., 16 A.R.S. In December 1986, the court affirmed the Board of Regents' decision.

Barrow contends it was error to affirm his suspension, claiming the university had no jurisdiction to punish Barrow since the incident involved occurred off campus. He also contends that insufficient evidence was presented to support the administrative decision. With regard to the individual appellees, Barrow contends it was error to grant their summary judgment motion, arguing that the record showed he was denied due process and that appellees presented no facts to support the legal argument on their motion. Finally, both Barrow and Keller appeal from the award of attorney's fees to the individual appellees, with Barrow contending that there is no legal authority to support the award against him and Keller contending that the

facts do not support the partial award of fees against him under Rule 11.

## A. REVIEW OF ADMINISTRATIVE DECISION

### 1. *Lack of Jurisdiction*

The evidence which was presented at the university trial board hearing was that in early December 1980, Barrow scheduled a session of his upper-level Spanish composition and conversation class to be held at Signal Hill in Saguaro National Monument West outside Tucson. The session, which served as the final examination in the class, consisted of the videotaping of students, Barrow, and others performing parts in a play the students had written with Barrow's assistance. Two class members testified that Barrow brought a bag of cookies to the session, and a portion of a cookie taken by one of the students from the bag was later analyzed and found to contain marijuana.

Barrow was charged under the Code of Conduct, which governs the conduct of all members of the university community. Its provisions list 36 individual offenses which can constitute a violation of the code. The two of which Barrow was found guilty are number 28, which prohibits the "[u]nlawful possession, manufacture, sale, or use of any narcotic or dangerous drug, as defined by the statutes of the State of Arizona," and number 32, "[t]he violation of any criminal state or federal law on or off the university campus." Code of Conduct § IV(A).

The Code of Conduct was adopted by the Board of Regents pursuant to former A.R.S. § 13–1093 (repealed in 1978 and replaced by § 13–2911), which authorizes the board to adopt rules to maintain public order on its property by governing the conduct of faculty, staff, students and visitors. Barrow contends that the wording of the statute prohibits the board from disciplining him for conduct that occurred off campus, arguing that the authority granted by the statute is limited to property owned, operated or controlled by the board. A.R.S. § 13–2911(G)(3). He also contends that the code is not applicable to any off-campus

activity since the statute was enacted "to [g]uarantee the students, faculty and other staff and the public that tax-supported education facilities would remain accessible and useful at all times for educational and other authorized public purposes...." *Tucson Public Schools, District No. 1 of Pima County v. Green,* 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972). Thus, he contends the code applies only to activities which occur on campus.

The evidence produced at the trial board hearing was that Barrow had scheduled a final examination which was to be held off campus. Such examinations are normally held on university property. Instead of conducting a written examination in a classroom located in a university building, Barrow chose to have his class film a play as the final exam. He testified that his grades were based on a student's "total participation" in the class, and both students who testified stated that their course grade was based on the filming, since they had taken no tests during the course and had received no grades on written work completed during the semester. The two students as well as Barrow testified that so far as they knew, nearly everyone in the class was present at the off-campus site.

A.R.S. § 15–1626 enumerates the general administrative powers of the Board of Regents. Among its other powers, the Board "shall ... [r]emove any officer or employee when in its judgment the interests of education in this state so require." § 15–1626(A)(4). That statute does not limit the Board's powers to on-campus activities. The power to suspend a professor when it is required by the interests of education is clearly included within a statute which authorizes a professor's removal under such circumstances. Thus, even though A.R.S. § 13–2911, under which the Code of Conduct was adopted, refers to on-campus property, the Board of Regents' authority over a professor extends to off-campus, university-related activities. We therefore find no merit to Barrow's contention that the Board had no jurisdiction to punish him for his off-campus conduct.

## 2. *Was the Evidence Substantial?*

Barrow next complains that substantial evidence was not presented to the trial board to support the findings of guilt. His specific complaints are that (1) there was no showing that the amount of marijuana in the cookie constituted a usable amount as required by Arizona case law and (2) the chain of custody for possession of the cookie was broken.

With regard to the issue of a usable amount of marijuana, Barrow notes that the criminalist who analyzed the cookie and determined that it contained marijuana testified that he could not estimate how much marijuana was contained in the portion of cookie he had been given to test and therefore could not say whether it was a usable amount. Barrow also notes that in order for the state to obtain a criminal conviction for possession of a narcotic drug when the amount of the drug involved is so small that a chemical test is necessary for its presence to be detected, the state must show that "the quantity is sufficient if usable under the known practices of narcotic addicts." *State v. Moreno*, 92 Ariz. 116, 120, 374 P.2d 872, 875 (1962).

The evidence from one of Barrow's students was that when Barrow arrived at the site of the filming, he carried a paper bag from his car and placed it on a picnic table, opened it and told the students to help themselves. Several people ate cookies from the bag, and the student testified that she later saw that the cookies looked as though they contained marijuana. The student asked Barrow if he had made the cookies, and he replied that he had made them that morning. She then had her boyfriend take a cookie from the bag and give it to her. She wrapped the cookie in tinfoil and later turned over one-third of it to a university official who had it analyzed. Thus, the criminalist tested, at most, one-third of a cookie selected at random from a bag containing a number of cookies.

█ "It has been held that only in those cases where the amount is incapable of being put to any effective use will the evidence be insufficient to support a conviction." *State v. Martinez*, 15 Ariz.App. 10, 11, 485 P.2d 600, 601 (1971). Circumstantial evidence may be used to show that a person was in possession of a usable amount of a narcotic drug. *State v. Junkin*, 123 Ariz. 288, 599 P.2d 244 (App.), cert. denied, 444 U.S. 983, 100 S.Ct. 489, 62 L.Ed.2d 411 (1979); *State v. Cunningham*, 17 Ariz.App. 314, 497 P.2d 821 (1972). In the process of denying that the cookies contained marijuana, Barrow testified that he was completely knowledgeable about marijuana and that he "didn't read it in a book." He then said:

> For that reason, I would not give anybody who did not do marijuana a cooky because this sort of thing would be—a cooky quite often will get them so high that they could have personal problems. This is a heavy way to begin and it is a bad way to, you know—

> So, I wouldn't do that to anybody under any circumstances.

> Q. Because cookies as opposed to smoking isn't self-regulating?

> A. Yeah, it is not. . . .

█ In view of the fact that Barrow, a self-proclaimed expert on the subject, testified that a single cookie could produce a substantial effect on a person and that the criminalist had available for testing only a third of a cookie selected at random from an entire bag of cookies, we find that substantial evidence was presented from which the trier of fact could determine by a preponderance of the evidence in the administrative proceeding that the marijuana in the cookie was a usable amount.

The evidence with regard to chain of custody of the portion of cookie tested was as follows. The student testified she had her boyfriend take a cookie out of the paper bag Barrow had brought to the site on Saturday. The student saw him take the cookie. She placed it in a piece of tinfoil and shortly thereafter, left the site and took the cookie home and gave it to her parents. The following Monday the student took one-third of the cookie to Dean Paul Rosenblatt. The remainder of the cookie was left at her home. About three days later, she contacted Dean Rosenblatt and learned the portion she gave him had

been lost. She then took him a second third of the cookie, and while she was in his office, he telephoned Executive Vice President Weaver and told him he was bringing another cookie portion to his office. The student and Rosenblatt then left his office and walked out of the building together. Sergeant Reinhardt of the university police testified that he went to Weaver's office on January 14, 1981, and was given the piece of cookie wrapped in tinfoil which he placed in an evidence envelope with an attached chain of evidence log.

Barrow complains because there was no showing of where the cookie was between the time the student gave it to Rosenblatt and January 14 when Weaver gave it to Reinhardt. He contends that lack of showing precluded the trial court from affirming the Board of Regents' decision. We disagree.

The administrative proceedings conducted pursuant to the Code of Conduct are not conducted under the formal rules of evidence. Instead, "[t]he trial board shall receive and consider oral and documentary evidence of the kind on which responsible persons are accustomed to rely in serious matters...." Code of Conduct § III(B)(2)(e).

■ The student testified that the cookies were raisin-oatmeal cookies, that the raisins in them were darker than usual and that the cookies contained greenish specks which gave the rest of the cookie a "yellowish-greenish" tint. Another student testified that the cookies looked hard, grainy and speckly, that they were thin and brittle and had dark speckles in them. The student who took the cookie home with her stated that when she took the second third to give to Rosenblatt, the cookie looked the same as before and showed no evidence of having been tampered with. Finally, at the hearing when she was shown the portion tested by the criminalist, she identified it as the cookie she had given to Rosenblatt.

■ Foundation for the admission of evidence can be established either by testimony showing a chain of custody or by identification testimony. *State v. Emery*, 141 Ariz. 549, 688 P.2d 175 (1984); *State v.*

*Macumber*, 119 Ariz. 516, 582 P.2d 162, cert. denied, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978).

Ariz.R.Evid. 901(a) provides that '[t]he requirement of * * * identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' A party can satisfy this requirement in a variety of ways: a witness can testify that the item is what it is claimed to be, Ariz.R. Evid. 901(b)(1), or the evidence can be shown to have distinctive characteristics which, taken in conjunction with circumstances, support a finding that it is what its proponent claims, Ariz.R.Evid. 901(b)(4).

*Emery*, 141 Ariz. at 551, 688 P.2d at 177. The fact that evidence could have been tampered with does not prevent its admission so long as sufficient identification testimony is presented. *State v. Ashelman*, 137 Ariz. 460, 671 P.2d 901 (1983). We find that sufficient identification of the cookie was made at the trial board hearing to warrant its admission into evidence.

We also find that substantial evidence was presented to support the Board of Regents' decision and to affirm the penalty of suspension which was imposed upon Barrow.

### B. SUMMARY JUDGMENT FOR INDIVIDUAL APPELLEES

#### 1. *Interference with Contract Cause of Action*

At the time of Barrow's suspension, Schaefer was president of the university, Weaver was executive vice president, Jones was provost for graduate studies, Rosenblatt was dean of the College of Liberal Arts, and Evans was head of the Department of Spanish and Portuguese. The complaint alleges that in February 1981, Weaver requested the head of the Romance Languages Department to begin proceedings to terminate Barrow. It further alleges that although the department head told Weaver that insufficient justification existed to dismiss Barrow, Weaver wrote to the

chairperson of the Committee on Academic Freedom and Tenure requesting that a hearing be held. A hearing date was set, but it was postponed after Barrow objected. Weaver again referred the matter to the committee, Barrow again objected, and the committee declined to hold a hearing because proper procedures had not been followed. No hearing before that committee was ever held. Instead, Evans initiated a complaint against Barrow under the Code of Conduct, and the proceedings thereunder resulted in the appeal before us.

Under the Code of Conduct proceedings, Jones was appointed by Schaefer to conduct a preliminary investigation of the complaint. He recommended that a university trial board be convened to hear some of the charges. After the trial and an administrative appeal, Schaefer recommended that Barrow be dismissed. The university official the student initially complained to was Rosenblatt. He was also the person to whom she gave the cookie. Rosenblatt then gave it to Weaver.

The complaint alleges that appellees intended to terminate Barrow's appointment "because of personal animosities and/or pedagogical differences." It alleges that Barrow has a contractual right to have accusations regarding his competency as a professor heard by the Committee on Academic Freedom and Tenure and that appellees interfered with that contractual right by choosing to proceed against him under the Code of Conduct.

■■■■ The elements of a cause of action for intentional interference with contract are a contract between the plaintiff and a third party; knowledge of the defendant that the contract exists; intentional interference by the defendant which causes the third party to breach the contract; a showing that the defendant acted improperly; and a showing that damage resulted to the plaintiff. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985). In response to appellees' motion for summary judgment, Barrow filed an affidavit of his attorney which referred to the administrative procedures available to appellees and those followed by them as

alleged in the verified complaint. Barrow contended that the pleadings and appellees' affidavits filed with their motion raised material issues of fact which "suggest[ed] a pattern of communication among these Defendants which was outside the Code of Conduct proceedings." We are unable to find anything in the pleadings which raises a genuine issue of material fact that appellees acted improperly in the administrative proceedings. Nor do we find any indication that the Board of Regents breached its contract with Barrow, an essential ingredient in his cause of action against the individual appellees.

This case is like that of *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (App.1983), in which the plaintiff also failed to produce any evidence that the defendants were acting other than within the scope of their authority as management representatives. The court held that since the facts showed the employees were acting for the company, they were the company and thus could not interfere with their own contract. Barrow contends that since none of the individual appellees ordered his suspension, they cannot be said to be the Board of Regents for purposes of this cause of action. He fails to remember that the actions of appellees of which he complains were that they improperly instigated the proceedings which ultimately led to his suspension. Thus, in that instance they were the Board of Regents and could not interfere with their own contract. See also *Lindsey v. Dempsey*, 153 Ariz. 230, 735 P.2d 840 (App.1987). We find that the trial court properly granted summary judgment on that cause of action.

## 2. *Due Process Cause of Action*

Barrow's final cause of action alleged that the individual appellees conspired to deprive him of his due process rights and his right to freedom of speech and association, all in violation of 42 U.S.C. § 1983. In his opening brief, Barrow contends that appellee Jones violated the procedures of the Code of Conduct, thereby depriving him of due process. He has not argued that

any other appellee deprived him of his rights.

The Code of Conduct provides that a university officer, appointed by the president, shall conduct an initial investigation of a complaint filed against a faculty member. The Code states that the person appointed "shall consult with the person making the complaint and the accused." Code of Conduct § II(A)(2)(b). After his investigation concludes, the person is then required to report his findings to the accused in an oral conference and advise the accused of the disposition he intends to recommend to the president.

Barrow complains because the first contact he had with Jones, whom Schaefer had appointed to investigate the complaint in this case, was a letter asking Barrow to make an appointment for an oral conference so that Jones could advise Barrow of the recommendation he intended to make to Schaefer. Barrow responded with a letter stating he would agree to the conference if the meeting were open to the public, if it were recorded or televised and if he received a copy of the charges made against him. Jones refused to open the meeting or to record it but agreed to provide Barrow with a copy of the charges. Barrow never contacted Jones to schedule the meeting. Jones wrote twice more seeking an appointment and finally sent his report to Schaefer. Ten days later, Barrow's attorney wrote to Jones, complaining, among other things, of the fact that no initial consultation was ever offered to Barrow. The record shows all required Code of Conduct procedures were complied with during the hearing before the university trial board and during the subsequent administrative review.

 As was noted by Division One of this court in *Tiffany v. Arizona Interscholastic Association, Inc.*, 151 Ariz. 134, 726 P.2d 231 (App.1986), a constitutional due process right is not created in favor of a person who suffers harm by reason of an administrative agency's failure to follow its own procedures. The requirement that the procedures be followed is founded on principles of administrative law, not on constitutional principles. *Tiffany,* supra; see

also *Board of Curators of University of Missouri v. Horowitz,* 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124, 136 n. 8 (1978); *Atencio v. Board of Education of Penasco Independent School District No. 4,* 658 F.2d 774 (10th Cir.1981).

 Barrow was accorded his full due process rights in all subsequent proceedings, including notice of the specific charges against him, a full hearing with testimony from witnesses, the right to present witnesses and evidence and to cross-examine the witnesses against him, representation at the hearing and a finding of a violation based upon a preponderance of the evidence. See *McClanahan v. Cochise College,* 25 Ariz.App. 13, 540 P.2d 744 (1975). We find that Barrow was not prejudiced by Jones' failure to confer with Barrow prior to the determination of his recommendation to Schaefer, particularly in view of the fact that Jones' recommendation was that insufficient evidence existed to warrant a hearing on several of the charges listed in the initial complaint. We also find significant the fact that Barrow failed to complain about the lack of a conference until ten days after Jones had sent his recommendation to Schaefer and was no longer involved in the matter.

## C. ATTORNEY'S FEE AWARD

### 1. *Barrow's Appeal*

Barrow's final complaint on appeal is with regard to the $22,560.50 award of attorney's fees entered in favor of the individual appellees. They sought the award under A.R.S. § 12–341.01(A) and (C) and 42 U.S.C. § 1988. The trial court did not specify the statutory basis for the award.

 With regard to the cause of action alleging violation of his due process rights, we find that an award of fees is appropriate under 42 U.S.C. § 1988, which allows a reasonable attorney's fee to the prevailing party in a § 1983 action. As Barrow has pointed out, an attorney's fee award to a prevailing defendant is more restricted than one to a prevailing plaintiff, the former being limited to cases in which the defendant has been required to defend against "unreasonable, frivolous, meritless or vexatious" actions. *Christiansburg*

*Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 656 (1978), quoting *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir.1976); see also *Mid–Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 (2d Cir.1978). Since it was clear that the only Code of Conduct procedure Barrow did not receive was the initial informal conference with Jones, we see no basis for his § 1983 action seeking $1 million in punitive damages against four other individuals. Because Barrow raised a colorable due process claim against Jones, however, the award of attorney's fees in favor of Jones was incorrect.

▆▆▆ With regard to the interference with contract cause of action which essentially alleged that the appellees were liable to Barrow for compensatory damages and $1 million punitive damages because they had proceeded against him under the Code of Conduct instead of the Committee on Academic Freedom and Tenure, we find that an award of attorney's fees in favor of all individual appellees was appropriate under A.R.S. § 12–341.01(C). Barrow dismissed his cause of action for breach of contract against the university based on that same contention a little more than one month after he filed his complaint, yet he continued the interference with contract action against the individual appellees. Four years after the complaint was filed, when appellees filed their summary judgment motion, Barrow still had no facts to support the cause of action. At the time of the motion, the trial date was imminent. His response to the motion was an affidavit which referred to several paragraphs in the complaint and an argument that appellees' own affidavits filed in support of their motion raised factual issues with regard to "a pattern of communication" among the appellees outside the Code of Conduct proceedings. The record contains evidence of the three elements required for an award of fees under A.R.S. § 12–341.01(C): the claim constituted harassment, was groundless and was not made in good faith. We find no error in the trial court's award. See *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 745 P.2d 617 (App.1987). Accordingly, even though the award in fa-

vor of Jones pursuant to 42 U.S.C. § 1988 was incorrect, we will not vacate the trial court's order.

## 2. *Keller's Appeal*

Finally, Barrow's trial attorney complains because the trial court found him jointly responsible for $5,933.50 of the $22,560.50 attorney's fee award entered against Barrow. The court imposed the fee under Rule 11(a), Ariz.R.Civ.P., 16 A.R.S. That rule permits a court to impose sanctions against a party or his attorney for violating the certificate that the pleading is well grounded in fact, warranted by existing law and not imposed for any improper purpose. The amount of fees for which Keller was made jointly responsible corresponded to the amount billed for services performed by appellees' attorneys after Keller filed opposition to appellees' motion for summary judgment.

Initially, we note that Keller has standing to raise the issue even though he was not a party to the action below. *Abril v. Harris*, 157 Ariz. 78, 754 P.2d 1353 (1987). In *Boone v. Superior Court in and for Maricopa County*, 145 Ariz. 235, 700 P.2d 1335 (1985), our supreme court held that Rule 11 is violated

> when the party or counsel knew, or should have known by such investigation of fact and law as was reasonable and feasible under all the circumstances, that the claim or defense was insubstantial, groundless, frivolous, or otherwise unjustified. It is also violated by the filing of pleadings for an improper purpose such as those intended to harass, coerce, extort, or delay.

145 Ariz. at 241–42, 700 P.2d at 1341–42. Since the issue on appeal is the correctness of the court's conclusion that appellees are entitled to an award of attorney's fees against Keller under Rule 11, we review that legal conclusion de novo. *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986).

▆▆▆ Appellees contended that Keller violated Rule 11 in two ways: first, by filing opposition to their summary judgment motion and second, by filing an affidavit in connection with that opposition which they contend was not based on personal knowl-

edge. Although we agree that the opposition to the motion was meager, we find no merit to appellees' contention that the mere filing of opposition was a violation of Rule 11. Since the affidavit specifically incorporated only those facts related to the administrative procedures available and those followed in the case and since Keller represented Barrow in those administrative proceedings, the affidavit is clearly based on Keller's personal knowledge. Thus, it cannot serve as the basis of an award of fees pursuant to Rule 11. We therefore reverse the fee award entered against Keller.

The Board of Regents has not requested attorney's fees on appeal, and we decline to award attorney's fees on appeal to individual appellees. The judgment in favor of the Board of Regents and the summary judgment in favor of the individual appellees are affirmed. The award of attorney's fees against Keller is reversed.

ROLL and HOWARD, JJ., concur.