**Allison Lynn ANDERSON by Next Friend Terry ANDERSON, Plaintiff,**

v.

**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, C. Eugene Cato and Gerry Adams, Defendants.**

**No. EV 88–139–C.**

United States District Court, S.D. Indiana, Evansville Division.

Sept. 26, 1988.

Theodore Lockyear, Lockyear & Kornblum, Evansville, Ind., for plaintiff.

James Flynn, Evansville, Ind., for defendant Gerry Adams.

Frederick D. Emhardt, Indianapolis, Ind., and Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., for defendants Indiana High School Athletic Ass'n and C. Eugene Cato.

## MEMORANDUM

BROOKS, Chief Judge.

This matter comes before this Court upon the plaintiff, Allison Lynn Anderson's, (hereinafter "Ms. Anderson"), who is a minor (sixteen years of age), institution of this action on August 29, 1988, by and through her next friend and parent, Terry Anderson, to obtain injunctive relief against the defendants, Indiana High School Athletic Association (hereinafter "IHSAA"), C. Eugene Cato in his capacity as Commissioner of the Indiana High School Athletic Association (hereinafter "Commissioner Cato"), and Gerry Adams in his capacity as principal of Evansville Reitz Memorial High School (hereinafter "Principal Adams"). The injunctive relief sought was for the purpose of restraining the IHSAA, acting by and through Commissioner Cato, and Principal Adams from declaring Anderson ineligible from participation in interscholastic athletics.

The facts of this case may be briefly summarized as follows:

Ms. Anderson is a 16–year–old female who resides with her parents at 7120 East Olive Street in Evansville. In early August of this year she decided to transfer from Evansville Day School, which is a small private school, to Evansville Reitz Memorial High School, which is a large private parochial school. Ms. Anderson is now fully enrolled at Memorial and her parents have paid her tuition. This transfer was made without a corresponding change of residence by her parents.

The IHSAA is a voluntary association open to all public, private, parochial and

institutional high schools of the State of Indiana, which administers a program of high school interscholastic athletics. The IHSAA was established for the purpose of adopting uniform standards to regulate interscholastic athletics and contests among member schools. Both Evansville Day School and Evansville Reitz Memorial High School are members of the IHSAA. Membership in the association is contingent upon strict adherence to the rules and regulations promulgated by the IHSAA.

Ms. Anderson began trying out at Memorial for the girls varsity volleyball team in hopes of making the squad. On August 10, 1988, Ms. Anderson's father informed Memorial of his intent to enroll his daughter and completed his portion of the IHSAA athletic transfer report. Mr. Anderson set forth on the report that the reasons for transfer were not related to athletics but were to assist Ms. Anderson in "broadening her horizons." Apparently, although Evansville Day School had an excellent academic reputation, the social and extracurricular activity opportunities were limited based on the size of the school's student population. Accordingly, Mr. Anderson, as well as Ms. Anderson, attempted to explain that the decision to transfer from Evansville Day School to Evansville Reitz Memorial High School was made after consultation with her parents, and was based on their beliefs that Memorial, a larger private school, would offer Ms. Anderson a broader range of social and extracurricular opportunities. Mr. Anderson set forth in the report that participation in interscholastic athletics at Memorial was not impetus to the transfer decision nor did it play any part in that decision. Neither plaintiff, nor her parents, were ever "recruited, solicited or influenced" by any official, teacher or other person affiliated with Memorial in connection with the decision to transfer to Memorial. This report was forwarded to the Principal of Evansville Day School who, on August 15, 1988, recommended eligibility. On August 17, 1988, Principal Adams of Memorial High School also recommended eligibility.

Rule 19 of the By–Laws of the IHSAA was amended effective July 1, 1988. Under Rule 19–6 and Rule 19–3, a student who transfers schools without a corresponding change of residence by her parents is ineligible to play athletics at the school to which she has transferred for a period of up to 365 days unless the following conditions exist:

(1) There is no evidence of transferring for primarily athletic reasons;

(2) there is no evidence of undue influence; *and*

(3) there is bona fide evidence that one of the following is true:

(a) The student is a ward of the court;

(b) The student's parents have divorced in which case the student shall be eligible in the district of the residence of the parent with legal custody;

(c) The student is an orphan;

(d) The student's former school has closed;

(e) The student's former school is non-accredited;

(f) The transfer is made pursuant to a school board mandate;

(g) The student attended by error the wrong school for 15 or less days;

(h) The transfer is for student promotion purposes;

(i) The transfer is from a correctional school; or

(j) The student is emancipated and has established a bona fide new residence in district or territory.

It was apparent from both Ms. Anderson and Mr. Anderson's representations as to why a transfer was contemplated that a failure to present any bona fide evidence was inevitable under Rule 19–6.

Rule 17–6.1 provides as follows:

"In determining whether a rule has been violated and, if so, what action is to be taken because thereof, consideration shall be given to: (a) whether strict enforcement of the rule in the particular case will serve the accomplished purpose of the rule; (b) whether the spirit of the rule has been violated; and (c) whether there exists in the particular case circumstances showing an undue hardship which would result from enforcement of

the rule. Note: It is to be understood that ordinary cases of ineligibility shall not be considered as coming under the hardship category."

On August 22, 1988, IHSAA Assistant Commissioner Ray Craft ruled Ms. Anderson ineligible to play interscholastic athletics for 365 days, pursuant to Rule 19–3 (IHSAA Transfer Rule). A letter from defendant Commissioner Cato to defendant Principal Adams at Reitz Memorial High School declared Ms. Anderson ineligible for athletics at Memorial. Commissioner Cato quoted from IHSAA Rule 19–3 as follows:

"Students who transfer may be eligible as to residence under the following conditions:

(a) They may represent a school to which they have transferred after 365 days from the date of enrollment therein provided their enrollment in that school has been continuous.

NOTE: This includes transfers from a private school to a private school, a private school to a public school, a public school to a private school, a public school to a public school.... See Section V of Athletic Transfer Form, a copy of which is enclosed."

Rule 17—*Rule Violations* provides Ms. Anderson with a process of appeal from the decision of the Assistant Commissioner Craft. Ms. Anderson is pursuing this appeal. The appeal was scheduled to be heard on September 15, 1988, by the Executive Committee of the IHSAA.

The Current Executive Committee consists of nine members of the Board of Directors of the IHSAA. The Board of Directors are selected by the principals of the member schools on the basis of population and geography. In considering appeals, the Executive Committee operates pursuant to Rule 17 of the By–Laws of the IHSAA. Rule 17 provides for a hearing before the Executive Committee of which a record is made and witnesses may be called and for a written statement of the reasons for the decision of the Executive Committee.

After being notified by the IHSAA on August 22, 1988 of her ineligibility, Ms. Anderson waited until August 29, 1988 to move for injunctive relief in the Vanderburgh Circuit Court, Cause No. 82C01–8808–CP–1619. Said Complaint was removed by Verified Petition for Removal of Civil Action unanimously filed by the defendants to the action. Said Complaint was filed as EV 88–139 in this Court on August 30, 1988. It was plaintiff's contention that although a right of appeal existed pursuant to Rule 17 of the IHSAA, said appeal was meaningless inasmuch as the volleyball season, for which the plaintiff would seek to be eligible, commences on Tuesday, August 30, 1988. The plaintiff further contended that before the Executive Committee met to hear her appeal seven games of a fourteen game season would be concluded. Thus, the plaintiff by virtue of being judged ineligible would be foreclosed from participation, thus resulting in immediate and irreparable injury, loss or damage as provided in Rule 65(b), Fed.R. Civ.P. All parties appeared at the emergency hearing set late in the afternoon on August 30, 1988. Counsel for defendant Gerry Adams orally moved to dismiss his client from the case. The Court took the motion under advisement. All parties were given an opportunity to present evidence and argument bearing on plaintiff's request for a temporary restraining order. The Court immediately after the hearing denied the plaintiff's Motion for Temporary Restraining Order, stating that the immediate harm facing the plaintiff at this time, by virtue of missing seven games before a hearing, and potentially several other games pending a decision, was at least partially the fault of Ms. Anderson in waiting so late before she decided to transfer. This Court found that notice of ineligibility on August 22, and an appeals hearing set for September 15, was not unreasonable. This Court further found that being denied the opportunity to participate in the games did not rise to immediate or irreparable harm. No decision was rendered on the defendant's Motion to Dismiss. A hearing on plaintiff's Motion for Preliminary Injunction was set for September 6, 1988.

Plaintiff challenges IHSAA Rule 19–6 which, with few exceptions, forbids any student who transfers from one member school of IHSAA to another member school to participate in interscholastic athletic competition for a period of 365 days from the date of the transfer. Ms. Anderson contends that the Rule 19–3 is unreasonable, arbitrary and capricious, unconstitutional and unenforceable in that it unlawfully discriminates against athletes in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, freedom of association as guaranteed by the United States Constitution and the right of freedom to travel as guaranteed by the Fourteenth Amendment to the United States Constitution. More specifically, the plaintiff alleges that the defendant IHSAA seeks by Rule 19–3 to prohibit all participation in athletics without any relationship to the reason for transfer, including by its Rule to arbitrarily conclude, absent any proof, that the plaintiff and others similarly situated have athletic reasons for transfer without any basis or foundation. Furthermore, that the plaintiff, by said arbitrary, capricious and unconstitutional Rule will be prohibited from associating with other students at Evansville Reitz Memorial High School, participating in extracurricular activities, deprived of the use of tax payer publicly supported facilities. That she is prohibited solely by traveling and transferring from one school to another to participate, without any basis or foundation, from athletic endeavors thus infringing on her right to travel. That plaintiff's eligibility was determined solely and exclusively on the basis of the transfer and for no other reason.

The defendants, IHSAA, Commissioner Cato and Principal Adams, filed Motion for Summary Judgment with supporting briefs on September 6, 1988.

A hearing on plaintiff's Motion for Permanent and Preliminary Injunction was held on September 6, 1988. All parties appeared at the hearing and were provided with the opportunity to present evidence and arguments bearing on plaintiff's request for Preliminary Injunction. This Court took the matter under advisement, consolidating the evidence received and heard at both the temporary restraining order hearing and the preliminary injunction hearing. A trial of the action on the merits was ordered advanced and consolidated with the hearing of this application pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. All parties to this action were telephonically notified by the Court of its decision denying the plaintiff's Motion for Preliminary Injunction on September 8, 1988. The parties were further informed that a formal opinion would be available forthwith.

## JURISDICTION

Plaintiff has invoked this Court's jurisdiction under 28 U.S.C. § 1343. That statute grants this Court's jurisdiction over any claim for relief, injunctive or monetary, from actions which allegedly deprive a party of any right secured by the United States Constitution or federal law, when the action is taken under the authority of state law. [28 U.S.C. § 1343(a)(3) ].

## OPINION

The defendants have challenged the plaintiff's Complaint by Motion for Summary Judgment on the following grounds:

1. The IHSAA has followed its rules and the plaintiff has failed to exhaust the administrative remedies afforded her by the appeals process of the IHSAA rules.

2. The IHSAA does not engage in "state action."

3. No constitutional rights of the plaintiff have been infringed and therefore, as a matter of law, the plaintiff has no cause of action under 42 U.S.C. § 1983.

The defendant seeks to defeat the plaintiff's Complaint both on jurisdictional and constitutional grounds. This Court, as a matter of procedure, must address those arguments relating to jurisdiction first.

## STATE ACTION

As previously noted, the claims presented in this case are brought before the Court pursuant to the Fourteenth Amend-

ment of the United States Constitution. The Fourteenth Amendment of the Constitution provides in part that "no state shall deprive any person of life, liberty or property without due process of law." Since the United States Supreme Court's decision in the *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883):

"This principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the state. *Shelley v. Kraemer*, 334 U.S. 1, 13 [68 S.Ct. 836, 842, 92 L.Ed. 1161] (1948).

It is well settled that the Fourteenth Amendment 'erects no shield against merely private conduct however discriminatory or wrongful.' *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982).

Similarly, 42 U.S.C. § 1983 provides:

If a person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As is clear from a reading of these sections of the Fourteenth Amendment and § 1983, claims brought pursuant to either raises the question of state action. Although two distinct lines of cases have developed as a result, the United States Supreme Court has spoken as to the relationship between them. In *United States v. Price*, 383 U.S. 787 n. 7, 86 S.Ct. 1152 n. 7, 16 L.Ed.2d 267 (1966), the Court stated:

In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' requirement under the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966).

Thus, 'the principle derived from both lines of cases are used interchangeably.' *Howard University v. NCAA*, 510 F.2d 213, 217 n. 4 (D.C.Cir.1975). Therefore, this Court in its discussion of state action will not distinguish between the § 1983 and Fourteenth Amendment cases, as approved by the United States Supreme Court." *See Hawkins v. National Collegiate Athletic Association*, 652 F.Supp. 602 (C.D.Ill.1987).

This Court felt compelled to include this language in this opinion due to the plaintiff's use of the Fourteenth Amendment in her Complaint and the defendants' use of 42 U.S.C. § 1983 in their Motion for Summary Judgment.

There is no precise formula to determine whether otherwise private conduct constitutes "state action." After "sifting facts and weighing circumstances," *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the inquiry in each case is whether the conduct is fairly attributable to the State. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

It is undisputed that the IHSAA is a voluntary association open to all private, public, parochial and institutional high schools of the State of Indiana which administers a program of interscholastic athletics for Indiana high schools. A majority of these schools are tax supported institutions, and the IHSAA is the beneficiary of tax funds from citizens of the State of Indiana. In the majority of cases, the salaries of principals and coaches are derived from tax funds. The IHSAA uses public facilities, athletic stadiums and gymnasiums for its events and provides for its members tournaments, and play-offs in athletic facilities which have been constructed and maintained with tax funds. Membership in the association is contingent upon strict adherence to the rules and regulations promulgated by the IHSAA. It is readily apparent after reviewing the IHSAA Rules (Plaintiff's Exhibit "1") that the IHSAA imposes on its member schools and their respective principals and certain coaches certain rules, duties and responsi-

bilities, including he supervision of student eligibility for participation in interscholastic athletic contests, when such contests may take place, under what rules such contests will be governed, and who is eligible to officiate the contests. The Indiana Supreme Court held:

> "Regardless of how the IHSAA denominates itself as an organization, or how it characterizes its relationship with member schools, it is abundantly clear that the association's very existence is entirely dependent upon the absolute cooperation and support of the public school systems of the State of Indiana. The enforcement of the rules promulgated by the IHSAA and adopted by its member schools may have a substantial impact upon the rights of these students enrolled in these tax supported institutions and we conclude therefore that the administration of interscholastic athletics by the IHSAA should be considered to be 'state action' within the meaning of the Fourteenth Amendment." *Haas v. South Bend Community School Corporation,* [259 Ind. 515], 289 N.E.2d 495 (1972), *IHSAA v. Raike* [164 Ind.App. 169], 329 N.E.2d 66 (1975).

These Indiana decisions are examples of the development of the entanglement theory. Pursuant to the entanglement theory analysis, state action will be found where

> "conduct that is formally 'private' becomes so intertwined with governmental policies or so impregnated with government character that the conduct becomes subject to the constitutional limitations placed upon state action." *Howard University v. NCAA,* 510 F.2d 213 (D.C. Cir.1975).

The entanglement theory provides that the government's involvement need not be either exclusive or direct; rather, government action may be found even though the government's participation was "peripheral, or its action was only one of several cooperative forces leading to the constitutional violation." *Id.*

The plaintiff relies on this theory to achieve "state action." The line of cases that adopt the entanglement theory as noted in *Hawkins,* 652 F.Supp. at 607, are referred to as "the high school athletic program cases." *Haas v. South Bend Comm. School Corp.,* 259 Ind. 515, 289 N.E.2d 495 (1972); *IHSAA v. Raike,* 164 Ind.App. 169, 329 N.E.2d 66 (1975); *Louisiana High School Athletic Association v. St. Augustine High School,* 396 F.2d 224 (5th Cir.1968); *Wright v. Arkansas Activities Association,* 501 F.2d 25 (8th Cir.1974); *Mitchell v. Louisiana High School Athletic Association,* 430 F.2d 1155 (5th Cir. 1970).

> "The high school athletic program cases involved the affairs of ostensibly private organizations in several states, which regulated high school athletic programs and other extra curricular activities. Consistently, the regulatory acts of these associations were found to constitute state action.
>
> In all of these cases, the courts recognized the private nature of the organizations, and the fact that they were voluntary associations. However, the focus of these courts was on the following facts: (1) membership of these associations consisted substantially of public high schools, which provided personnel, facilities, and financial support; (2) the organization's rules were promulgated by the vote of members, including public schools; and (3) these private organizations significantly regulated and effected the program of these public entities, including state championship events, imposing restrictions on practices and eligibility, conducting investigations, and imposing sanctions. These courts concluded that the organizations were sufficiently intertwined with state instrumentalities, whose involvement was significant, although not exclusive, as to be subject to constitutional restraints." *Howard University v. NCAA,* 510 F.2d at 218.

More recently, the development of state action cases arising subsequent to the high school athletic program cases take a somewhat narrower view. This Court is now guided in its analysis of the degree of state control and involvement in this factual setting by the Supreme Court's recent pronouncements on the state action issue. In

1982, the United States Supreme Court decided *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) and *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), in which it rejected the high school athletic program state action analysis and mandated a new three part test.

In deciding the question of whether state action existed, the court set out a three factor analysis: (1) to what extent the business is subjected to state regulations. However, the court asserted that the mere fact that a business is subject to state regulation does not in and of itself convert its actions into that of the state for purposes of the Fourteenth Amendment; (2) the sufficiency of a close nexus between the state and the challenged action of the regulatory entity, so that the action of the entity may be fairly treated as that of the state itself; (3) whether the private decision involves such coercive power or significant encouragement, either overt or covert, by the state that the choice must in law be deemed to be that of the state. *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. at 2786. The court went on to note that the required nexus may be present if the private entity has exercised powers that are "traditionally the exclusive prerogative of the state." *Rendell–Baker,* 457 U.S. at 840–42, 102 S.Ct. at 2770–72.

It is important to note that the cases that arose after the Supreme Court opinions of *Blum* and *Rendell–Baker* dealt primarily with colleges and the National Collegiate Athletic Association (hereinafter "NCAA"). Although these decisions deal with institutions that are of higher education, the athletics involved and the organizations which promulgate the rules which insure the standards of the association are virtually the same in that the ideals and principals of the IHSAA and the NCAA mirror each other. Accordingly, it is this Court's opinion that the reasoning as it applies to state action set forth in *Arlosoroff v. NCAA,* 746 F.2d 1019 (4th Cir.1984); *McHale v. Cornell University,* 620 F.Supp. 67 (D.C.N.Y.1985); *Graham v. NCAA,* 804 F.2d 953 (6th Cir. 1986) and *Hawkins v. NCAA,* 652 F.Supp.

602 (C.D.Ill.1987) is equally applicable to high school athletics and the IHSAA.

As discussed earlier, the IHSAA is a voluntary organization which administers a program of high school interscholastic athletics. The IHSAA is comprised of public, private, parochial and industrial schools. Membership in this association is contingent upon strict adherence to the rules and regulations promulgated by the IHSAA. All participating institutions are required to abide by the rules promulgated by the IHSAA, and an Executive Committee has power to enforce those rules. The Executive Committee is comprised of ten members chosen by the Board of Directors who are currently holding office. The Board of Directors is made up of fifteen members. The term is for three years. Candidate eligibility is limited to administrators or full time teachers of grade 9 or above from a member school in good standing or superintendents who have no more than one member high school under their supervision. To qualify as a nominee such person shall be from the class of school from which the selection is to be made in that particular year. Each nominating petition should be signed by five member schools principals, such completed petitions filed with the Commissioner. The Commissioner sends these ballots to all principals of member schools in good standing to constitute the electorate. Persons receiving the highest number of votes shall be declared duly elected. The By-laws themselves can be amended from time to time by an affirmative vote of a majority of the Board of Directors. Upon notice from the Commissioner, written petitions by at least 20 member high school principals from each of five IHSAA districts can vote approval or disapproval of such current amendment. If a majority of the membership shall vote disapproval of the amendment, it shall not become effective as such, otherwise it shall remain in force.

■ It is a fact that the IHSAA is both public and private as well as parochial. It is not, nor has it ever been an official arm of the State of Indiana. No statute, regulation, or ordinance of the State provides

for its existence, its membership, its governing body or its implementation of rules. Accordingly, the IHSAA is not an agency which is subjected to or governed by any state government. As its own by-laws provide, it is governed by its own Board of Directors, Executive Committee and virtually all the member institutions. The fact the IHSAA is diverse in its membership and a majority vote is needed to make decisions, avoids public institution collusion. This minimizes, if not eliminates, the extent to which the IHSAA could be subject to state regulation. *Hawkins v. NCAA*, 652 F.Supp. at 958. Accordingly, it is this Court's opinion that the plaintiff has failed to achieve the first factor of state action test enumerated by *Blum* and *Rendell–Baker*.

Once again, it is undisputed that the majority of IHSAA members are public institutions which are state supported. As such, a majority of financial support to the association occurs by reason of such membership. It is important to note that the IHSAA receives no direct payment of tax dollars for its support. The income of the IHSAA is derived from various high school athletic programs that the association administers.

"Approximately 90 percent of its revenue is gained from the state high school basketball tournament alone. After the necessary expenses have been paid, including the rental of the facilities, the money is returned to the participating members." *Haas*, 289 N.E.2d at 496–97.

However, the fact these public institutions generate revenue for the IHSAA does not alone establish state action. "Even if such funding was 100%, it is insufficient to render the IHSAA's conduct state action." *Rendell–Baker*, 457 U.S. at 840, 102 S.Ct. at 2771. These facts do not alter the basic character of the IHSAA as a voluntary association of public, private and parochial institutions. *Arlosoroff*, 746 F.2d at 1021. *Arlosoroff* notes:

"It is not enough that an institution is highly regulated and subsidized by a state. If the State in its regulatory or subsidizing function did not order or cause the action complained ... there is no state action." *Id.*

Accordingly, plaintiff's allegations of government regulation and financial assistance do not support a finding of state action.

However, a required nexus may be established if the entity has exercised powers that are "traditionally the exclusive prerequisite of the state." Although the IHSAA may perform a public function in overseeing the state's interscholastic athletics, it remains a voluntary organization, private in that it is separate from the state, for, despite the IHSAA regulatory or overseeing function regarding the state's interscholastic athletics, such regulation of state interscholastic sports cannot fairly be said to be traditionally an exclusive state function. *Arlosoroff*, 746 F.2d at 1022, quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1975). Constitutional standards are only invoked where it can be shown that the state is responsible for the specific conduct of which the plaintiff complains. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786. Certainly, if providing education to our nation's children is not an exclusive state function, neither can regulating interscholastic sports be an exclusive state function. *Hawkins*, 652 F.Supp. at 609. Therefore, the second test of state action fails.

It is this Court's opinion that in order for the plaintiff to prove the third element of the state action test, proof must be shown that the state supported institutions that are members of the IHSAA banded together to vote in opposition to the private and parochial members of the association or otherwise controlled the decision to amend the Transfer Rule (Rule 19–6) (effective July 1, 1988) to provide for an automatic 365 day suspension when a transfer is made without a corresponding residence change.

There is no evidence that the representative of the wholly state supported institutions joined together to vote as a bloc to effect adoption of the by-laws relating to transfer eligibility over the objection of the private and parochial institutions. There is

simply no evidence whatsoever that a state supported institution controlled or directed the result. *Graham*, 804 F.2d at 958. The plaintiff has never suggested that the state supported institutions caused, directed or controlled the implementation of the transfer rule. Consequently, this Court cannot infer any state involvement in the IHSAA decision to promulgate the rules. This Court, however, takes notice as did the Court in *Hawkins*, that the state may have some type of involvement in IHSAA decisions. However, this input does not rise to the level of "exercising coercive power or significant encouragement so that the decisions of the IHSAA are deemed to be that of the state itself." Any input the state may have does not affect the independent status the IHSAA enjoys. It is this Court's opinion that the IHSAA serves the common need of member institutions for regulation of athletics while correlating their diverse interests. Through representatives of all the members Rule 19–6 was adopted, not as a result of governmental compulsion, but in the service of the common interests of the members. The adoption of this transfer rule was private conduct, exclusive of the association, and not state action. Accordingly, the plaintiff fails the third and final state action test set forth in *Blum* and *Rendell–Baker*.

As such, this Court finds that the IHSAA is not engaged in state action. Therefore, this Court GRANTS the defendant's Motion for Summary Judgment. Plaintiff's Motion for Injunctive Relief is summarily DENIED.

Although it is unnecessary to consider the constitutionality of the IHSAA transfer rule (Rule 19) by virtue of finding no jurisdiction exists, this Court is compelled to review the arbitrary and capricious effect this rule has on students who transfer under the same or similar circumstances. It is this Court's hopes that such analysis will aid the IHSAA in reviewing its rules and achieving consistency, as well as fairness, in directing and encouraging wholesome amateur athletics in the schools of Indiana.

■ This Court recognizes, as do many other jurisdictions, that students have no Constitutional rights to participate in interscholastic athletics. *IHSAA v. Lawrence Circuit Court*, 240 Ind. 114, 162 N.E.2d 250 (1959). *Haas v. South Bend Community School Corporation*, 259 Ind. 515, 289 N.E.2d 495 (1972); *Mitchell v. Louisiana High School Athletic Association*, 430 F.2d 1155 (5th Cir.1970); *Sill v. Pennsylvania State University*, 318 F.Supp. 608, *aff'd* 462 F.2d 463 (3rd Cir.1972); *Oklahoma High School Athletic Association v. Bray*, 321 F.2d 269 (10th Cir.1963). However, it is this Court's opinion that a student cannot be arbitrarily denied "the opportunity to qualify" to participate in interscholastic athletic competition. *Haas, supra* at 497. The fact a student has no constitutional right to participate in no way affects a student's right to have an opportunity to qualify.

The philosophy of the IHSAA transfer rule (Rule 19) is as follows:

"a. Participation in interschool athletics is a privilege provided for students who meet the democratically-established standards of qualification as set forth by this Association.

b. The privilege of participation in interschool athletics should fundamentally be available to bona fide students in school districts where their parents or legally-established guardians reside.

c. Standards governing residence and transfer are a necessary prerequisite to participation in interschool athletics because:

1. They protect the opportunities of bona fide resident students to participate.

2. They provide a fundamentally fair and equitable framework in which interschool athletic competition, in an educational setting, can take place.

3. They provide uniform standards for all schools to follow in maintaining athletic competition.

4. They support the educational philosophy that athletics is a privilege which must not be permitted to assume a dominant position in a school's program.

5. They keep the focus of educators and students on the fact that students attend school to receive an education first and participate in athletics second.

6. They maintain the fundamental principle that a high school student should live at home with his/her parents or legally-appointed guardian (if the parents are deceased) and attend school in the school district in which the parents or guardians live.

7. They reinforce the view that the family is a strong and viable unit in our society, and as such, is the best place for students to live while attending high school.

8. *They serve as a deterrent to individuals who would seek to recruit student athletes to attend a particular school for the purpose of building athletic strength.*

9. They serve as a deterrent to students running away from or avoiding discipline that has been imposed.

10. They protect school programs from losing students who have established an identity as an athlete and, as such, are contributors to the overall school program and image."

(EMPHASIS ADDED)

Commissioner Cato testified that the prior transfer rule allowed the principals of the prospective schools to review the transfer application and determine if such transfer was because of athletic reasons or undue influence. If both principals agreed, then the student would be deemed eligible, subject to Executive Committee approval. However, in the meantime, the student was allowed to participate. Commissioner Cato expressed that 400 principals, as members of the IHSAA, were making the eligibility determination. Each principal had his or her own view of the application and interpretation of the transfer rule. Therefore, no consistency existed in the eligibility rulings. Accordingly, the Board of Directors of the IHSAA met and promulgated Rule 19–3 which provides for an automatic 365 day suspension from interscholastic athletics upon transfer. However, the automatic suspension is subject to the provisions of Rule 19–6 if such transfer was made without a corresponding change of residence by the parent-guardian:

"The principal of the recruiting school shall conduct an investigation and after such investigation may recommend residence eligibility to the Commissioner provided:

1) There is no evidence of transferring for primarily athletic reasons;

2) There is no evidence of undue influence; and

3) There is on file bona fide evidence that one or more of the following criteria has been met:

a. Student is a ward of the court. A guardian appointed for the purpose of making an athlete eligible shall not be accepted. Guardianship will not be accepted—when parent/s are living and the home status is unchanged. [see 17–6.1(c)—undue hardship]

b. Student shall be eligible in the district of the residence of the parent with legal custody when the status of the home is changed.

c. Student is an orphan.

d. Student's former school closed.

e. Student's former school is non-accredited.

f. Transfer is made pursuant to a school board mandate.

g. Student attended by error in wrong school for 15 or less days.

h. Transfer is for student promotion purposes.

i. Transfer is from a correctional school.

j. Student is emancipated and has established a bona fide new residence in district or territory."

In this case both the transferring school principal and the receiving school principal conducted an investigation and recommended eligibility to the Commissioner. This however is subject to Commission approval.

Commissioner Cato reviewed Ms. Anderson's Athletic Transfer Report and both principals' recommendations. Com-

missioner Cato then denied Ms. Anderson's eligibility, on the basis that although an athletic reason was not involved and undue influence had not occurred, Ms. Anderson did not fit into any of the criteria enumerated in 19–6 A–J. Accordingly, Rule 19–3, the automatic 365 day suspension, was imposed on Ms. Anderson, pending appeal.

Rule 17 encompasses the provisions relating to appeal. Rule 17–6.1 provides:

"In determining whether a rule has been violated and, if so, what action is to be taken because thereof, consideration shall be given to:

a. Whether strict enforcement of the rule in the particular case will serve to accomplish the purpose of the rule;

b. Whether the spirit of the rule has been violated; and

c. Whether there exists in the particular case circumstances showing an undue hardship which would result from enforcement of the rule. Note: It is to be understood that ordinary cases of ineligibility shall not be considered as coming under the hardship category."

It was Commissioner Cato's opinion, as well as many Executive Committee members who testified before the Court, that the reason for the Amendment to Rule 19 was to achieve consistency in eligibility rulings and to prevent recruiting or school jumping which they thought was the most serious problem causing such a strict amendment. It is obvious that Ms. Anderson is transferring for reasons other than athletics and that no undue influence existed resulting in the transfer. Ms. Anderson quite simply only wants to attend a larger school which has more social and extracurricular opportunities. There has been no evidence that Ms. Anderson is a star athlete and her transfer was motivated by undue influence or the desire to school jump. Ms. Anderson, in reviewing the Appellate Rules of the IHSAA, immediately sees, as does this Court, that a student who transfers legitimately for reasons such as Ms. Anderson will be absorbed into a rule not ever meant to affect her. Consequently, she and others like her will be a victim of an over-broad, over-inclusive rule. The spirit of the rule is expressed in the philos-

ophy as well as by the Commissioner and Executive Committee members. The harsh reality of recruitment yields harsh rules. Ms. Anderson can in no way fit the hardship requirement of Rule 17–6.1. The "spirit of the rule," as well as the term "hardship" is not defined in the IHSAA rules. However, after hearing testimony by the Commissioner and Executive Committee members, it is obvious that their rational interpretation of such terms included in the rule provide no remedy for Ms. Anderson or others in her situation. It is apparent that the application of the rule's ineligibility bar to Ms. Anderson and other transfer students similarly situated, is unreasonable

"because it is manifestly clear that the rule's objectives will not be frustrated or endangered in any way by her immediate participation in interscholastic competition as a member of the Memorial volleyball team." *Barnhorst v. Mo. State High School Activities Ass'n,* 504 F.Supp. 449 (1980).

The fact remains though that although the rule carves out various examples whereby students are exempted from the ineligibility bar no mechanism exists whereby individuals such as the plaintiff could be exempted from the ineligibility bar.

■ It is this Court's opinion that the provisions provided for in Rule 19–6 are too narrow, thus resulting in an unnecessarily broad rule. The privilege of participation in interschool athletics is withheld for a period of 365 days, not only for students who have violated the IHSAA interest in prevention of recruiting and school jumping, but from all students who transfer, whether or not with legitimate reasons regardless if they fit within the narrow exceptions provided for in Rule 19–6. All students are covered by a blanket classification which has no relationship to whether a particular student's reasons for changing schools are athletic. Accordingly, this Court is of the opinion that such rule holding for 365 day suspension in cases like Ms. Anderson's are arbitrary and capricious. Such rule can in no way be said to "promote, encourage, and direct wholesome amateur athletics in schools of Indiana."

Ms. Anderson, as well as any other transferring student in her situation, who cannot bring themselves in the narrow categories provided by the IHSAA, *are automatically denied the opportunity to participate* in interscholastic athletics for a period of one (1) year. The rules of the IHSAA, in essence create an irrebuttable conclusion of law that other transferees have been the victims of unscrupulous practices. *See Sturrup v. Mahan*, 261 Ind. 463 at 468–69, 305 N.E.2d 877 at 881 (1974).

"This is precisely when the rule sweeps too broadly, they create an over-inclusive class—those who move from one school to another for reasons wholly unrelated to athletics are grouped together with those who have been recruited or have jumped schools for athletic reasons. In short, the purported objective of the transferee eligibility rules is to prevent the use of undue influence and school jumping, but their practical effect is to severely limit the transferee eligibility in general. *The rules as presently constituted penalize a student athlete who wishes to transfer for academic, religious, or social reasons or for any other legitimate reasons. Surely, denying eligibility to such transferees in no way furthers IHSAA objectives." Id.* at 881. (Emphasis Added)

Although this Court did not follow the state action reasoning set forth in *Sturrup* and *Haas* the opinion with respect to the constitutionality of the transfer rules is accepted by this Court. The objectives expressed by the IHSAA in *Haas* and *Sturrup* remain the same as the objectives of the IHSAA today. This was clearly expressed by Commissioner Cato and the Executive Committee members during testimony before this Court.

Finally, the Court regrets the result. The rule is unfair, lacks sensitivity and penalizes a student that it was never intended to cover and shouldn't.

The rule lacks provision for the application of common sense and reasonableness. Its rigid enforcement fails to cure or address the abuse for which it was intended. Pure and simple, it's an overkill, which the Court hopes is rectified in the immediate future. Unfortunately, if and when it is done, it will not help Ms. Anderson.

The consequences of the rule overlooks and minimizes the importance and effect that participation in high school sports has on a young person. While academics are certainly important, competitive sports reveal and demonstrate a separate dimension of character.

It is not enough for an association like the IHSAA to simply say that it is a harsh result and that a few individuals will be hurt or "fall through the cracks." Additional efforts need to be made to assure that the legitimate applicant is afforded every opportunity to demonstrate the harmless effect of its request, and that the integrity and goals of the IHSAA will not be tarnished by granting such reasonable exceptions. Opening a can of worms is a worthy endeavor if it means doing what is right.

The Court recognizes that total justice is unattainable. Certain injustices and unfairness are inevitable, but they should be minimized where possible. Yet, here, the message the Court perceives being sent to young people like Ms. Anderson is that we (IHSAA) will stick with a rule which admittedly is inadequate, lacking proper standards or guidelines, but to vary from it will require us to judge individual cases on their merits and determine if someone is lying. The Court says, yes, it will be more trouble and require more time, but it's worth it when it means some young person may not get to participate in athletics for one (1) year.

The Court's frustration may appear obvious, but if I were in your shoes I wouldn't simply say, "that's the way the volleyball bounces." I would seek to demonstrate to Ms. Anderson and others like her that I care. I care enough to fashion a remedy that is commensurate with the harm she has committed to the total program.

IT IS SO ORDERED.