59 P.3d 806

**Jason Ahmed PARKER, a Minor, by and through his Father and next Friend, Samuel L. PARKER, Sr., Petitioner–Appellant,**

v.

**ARIZONA INTERSCHOLASTIC ASSOCIATION, INC., its Executive Board, and Harold E. Slemmer, Executive Director, Respondent–Appellee.**

No. 1 CA–CV 01–0364.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 26, 2002.

Review Denied April 22, 2003.

**44**

Richard D. Coffinger, Glendale, for Petitioner–Appellant.

Mark R. Mignella, Phoenix, for Respondent–Appellee.

## OPINION

GARBARINO, Judge.

¶1 We hold that the transfer rule of the Arizona Interscholastic Association, Inc. (AIA) does not conflict with Arizona's open enrollment policy, nor does it violate the Equal Protection Clauses of the Arizona and United States Constitutions. We lack jurisdiction to decide the constitutionality of the AIA restitution rule. Jason Ahmed Parker, through his father and next friend, Samuel L. Parker, Sr., appeals from the judgment of the trial court upholding the application of the transfer rule, which declared Parker ineligible for interscholastic athletic competition in football and basketball for one year from the date of his voluntary transfer from Barry Goldwater High School (BGHS) to Deer Valley High School (DVHS). We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

¶2 The AIA is a voluntary association of over 220 public and private Arizona high schools and one California high school. The AIA promulgates rules and regulations pertaining to interscholastic activities, including athletic competition among its members.

¶3 Parker attended BGHS during his freshman year and most of his sophomore year. In April of his sophomore year, Parker voluntarily transferred to DVHS. His transfer was not athletically motivated, and

he was not recruited to attend DVHS. While at BGHS, Parker participated in football and basketball. Pursuant to the AIA transfer rule, Parker was found ineligible to play football and basketball at DVHS for one year following his voluntary transfer. According to the transfer rule, a student transferring from one school to another without a corresponding change in domicile may not participate at the receiving school in those sports he or she had played during the previous twelve months. Parker sought a hardship waiver, which the AIA denied. The stated purpose of the transfer rule is to deter athletically motivated transfers and recruitment of students and to promote "the educational philosophy that participation in athletics is a privilege which should not take a dominant role over academics."

¶ 4 Parker filed a petition for special action in superior court seeking a preliminary injunction and temporary restraining order prohibiting enforcement of the transfer rule and the restitution rule.[1] The trial court granted an interlocutory stay restraining the AIA from enforcing its ineligibility determination and from enforcing the restitution rule.

¶ 5 Following a trial, the trial court found that the transfer rule did not violate Arizona's open enrollment statutes, Arizona Revised Statutes (A.R.S.) sections 15–816 and 15–816.01 (2002). The trial court also concluded that the transfer·rule did not violate Parker's equal protection rights under the Arizona and United States Constitutions, finding that it was rationally related to a legitimate state interest. See Ariz. Const. art. 2, § 13; U.S. Const. amend. XIV, § 1. The trial court, however, concluded in the final judgment that the restitution rule was unconstitutional and enjoined the AIA from

enforcing it based on Parker's participation in interscholastic basketball competitions in accordance with the prior interlocutory stay order. Parker timely appeals. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (1992) and 12–2101(B) (1994).

## DISCUSSION

### I. *Mootness of Transfer Rule Judgment*

¶ 6 Parker has already completed his twelve-month period of ineligibility. However, as both parties recognize, the dispute over the validity of the transfer rule will likely arise again. We agree that similar cases will recur, yet evade review because it is not possible to fully litigate such issues within the rule's one-year ineligibility period. The questions presented are of significance to students, parents, school boards, school administrators, and the AIA, which has the responsibility of administering interscholastic athletics. It is the general policy of this Court not to hear issues that have become moot. *Fry's Food Stores of Ariz. v. Indus. Comm'n*, 177 Ariz. 264, 266, 866 P.2d 1350, 1352 (1994). "We make exceptions to this self-imposed judicial restraint, however, when issues have significant public importance or are likely to recur." *Id.* Accordingly, we exercise our discretion to decide this issue on the merits. *See Quimby v. Sch. Dist. No. 21 of Pinal County*, 10 Ariz.App. 69, 71, 455 P.2d 1019, 1021 (1969).

### II. *Open Enrollment Statutes*

¶ 7 Parker argues that the AIA's transfer rule is invalid because it conflicts with A.R.S. §§ 15–816 and 15–816.01(A), which establish an open enrollment policy in Arizona schools.[2] Under these statutes, school dis-

---

1. Under the AIA restitution rule, if any student is determined to be ineligible by the AIA, "but is permitted to participate in interscholastic competition ... in accordance with the terms of a court restraining order or injunction against [the] school [or] the AIA, and said restraining order or injunction is subsequently ... vacated, stayed, reversed, or it is finally determined by the courts that injunctive relief ... was not justified," the AIA may require that the team and/or individual victories, awards, and records be forfeited or vacated.

2. The AIA does not dispute that it is a state actor and subject to the constraints that apply to state actors. *See Clay v. Ariz. Interscholastic Ass'n, Inc.*, 161 Ariz. 474, 476, 779 P.2d 349, 351 (1989) ("For purposes of judicial review, the AIA has been treated as an administrative agency."); *Clark v. Ariz. Interscholastic Ass'n, Inc.*, 695 F.2d 1126, 1128 (9th Cir.1982) ("[T]he activities of the AIA are so intertwined with the state that the regulations of the AIA must be considered state action."). Therefore, we assume, without deciding, that the AIA must exercise its rule-making authority so as not to conflict with this state's

tricts "shall implement an open enrollment policy without charging tuition." A.R.S. § 15–816.01(A). Section 15–816 defines "open enrollment" as

a policy adopted and implemented by a school district governing board to allow resident transfer pupils to enroll in any school within the school district, to allow resident pupils to enroll in any school located within other school districts in this state and to allow nonresident pupils to enroll in any school within the district pursuant to § 15–816.01.

Under this open enrollment policy, students are able to transfer schools voluntarily and without any change in domicile.

¶ 8 Parker contends that under this legislative policy, a student cannot be penalized in any way if he or she chooses to transfer schools for reasons not related to athletics. He argues that participation in athletics is a protected component of the educational process which he is entitled to pursue at any school he chooses under Arizona's open enrollment policy.

¶ 9 Citing Article 11 of the Arizona Constitution and *Shofstall v. Hollins*, 110 Ariz. 88, 90, 515 P.2d 590, 592 (1973), Parker contends that the Arizona Constitution establishes a fundamental right to education. Although in *Shofstall* the supreme court did state that education was a fundamental right, they applied a rational basis test in upholding Arizona's public school financing system. *Shofstall*, 110 Ariz. at 90–91, 515 P.2d at 592–93. The supreme court noted this inconsistency in *Roosevelt Elementary School District Number 66 v. Bishop*, 179 Ariz. 233, 238, 877 P.2d 806, 811 (1994).

¶ 10 Here, we need not decide whether education is a fundamental right because Parker takes the argument one step further and contends that the right to an education includes the right to participate in interscholastic athletics. To support his contention, Parker cites *Tiffany v. Arizona Interscholastic Ass'n*, 151 Ariz. 134, 726 P.2d 231 (App. 1986), which recognizes that participation in interscholastic athletics is an integral compo-

nent of the educational process. *Id.* at 137–38, 726 P.2d at 234–35. Parker also relies on *Alexander v. Phillips*, 31 Ariz. 503, 254 P. 1056 (1927), which holds that physical education is properly included as part of the state's educational curriculum and that interscholastic competition is a permissible method of imparting such knowledge. *Id.* at 514, 254 P. at 1059. Finally, Parker argues that interscholastic athletics is a protected component of the educational process because the legislature included in A.R.S. Title 15, chapter 7, entitled "curriculum," a statute requiring school boards to adopt policies and procedures governing extracurricular activities. *See* A.R.S. § 15–705 (2002).

¶ 11 Parker misconstrues the cases he cites in support of his arguments. Although recognizing that a student has a right to a public education, *Tiffany* holds that absent "serious damage to his 'later opportunities for higher education and employment,'" participation in interscholastic athletics itself is not a constitutionally protected right. *Tiffany*, 151 Ariz. at 138–39, 726 P.2d at 235–36 (quoting *Goss v. Lopez*, 419 U.S. 565, 575, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). *Tiffany* is in accord with the majority of jurisdictions that have considered this issue. *Tiffany*, 151 Ariz. at 137, 726 P.2d at 234 (citing cases). As recognized in *Tiffany* and by numerous other state and federal courts, interscholastic athletics is an important component of the educational process, but these individual components are not constitutionally protected. *Id.* at 137, 726 P.2d at 234 (quoting *Albach v. Odle*, 531 F.2d 983, 985 (10th Cir. 1976)); *see also Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir.1980) (holding that there is no constitutionally protected right to participate in interscholastic athletics, and that no fundamental rights are burdened by the transfer rule); *Anderson v. Indiana High Sch. Athletic Ass'n*, 699 F.Supp. 719, 728 (S.D.Ind.1988) (explaining, in dicta, that students do not have a constitutional right to participate in interscholastic athletics); *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F.Supp. 356,

---

laws or the Arizona or United States Constitutions. *See Ferguson v. Ariz. Dep't of Econ. Sec.*, 122 Ariz. 290, 292, 594 P.2d 544, 546 (App.1979)

("[A] rule or regulation of an administrative agency should not be inconsistent with or contrary to the provisions of a statute....").

366 (D.Ariz.1983) (noting that participation in intercollegiate athletics is not a constitutionally protected interest); *Steffes v. Cal. Interscholastic Fed'n*, 176 Cal.App.3d 739, 222 Cal.Rptr. 355, 361 (1986) (noting that under the California Constitution, education is a fundamental right, but the right to participate in interscholastic athletics is not).

¶ 12 The legislature has not included interscholastic athletics as a graduation requirement for high school students, and Parker has not provided us with evidence that it is part of the minimum course of study required for him to graduate from DVHS. *See* A.R.S. § 15–701.01(B) (2002) (requiring school districts to prescribe graduation criteria "in at least reading, writing, mathematics, science and social studies"). Thus, we conclude that the mere fact that the legislature placed A.R.S. § 15–705 in the chapter on educational curriculum does not render participation in interscholastic athletics a constitutionally protected component of the right to an education.

¶ 13 The open enrollment statutes do not expressly protect a transferring student's right to participate in interscholastic athletics. As written, the open enrollment statutes provide only freedom to enroll *free of tuition* in the school of one's choice. Following the enactment of the open enrollment statutes, students can now attend the schools of their choice. The only stated legislative mandate is that school districts can no longer charge tuition. The statutes are silent as to a student's ability to participate in interscholastic athletics as a result of a voluntary transfer. Other educational statutes specifically address interscholastic activities. *See* A.R.S. § 15–347 (2002) (extracurricular activities; cultural traditions); A.R.S. § 15–348 (2002) (interscholastic athletics non-contact sports); A.R.S. § 15–802.01 (2002) (children instructed at home; eligibility to participate in interscholastic activities). Therefore, had the legislature so intended, it could have expressly provided for a student's continued athletic eligibility following a voluntary transfer.[3] The failure to include such statutory language supports our conclusion that the open

enrollment statutes do not give rise to a fundamental right to participation in interscholastic athletics.

¶ 14 For these reasons, we hold that the transfer rule does not violate the open enrollment policy codified in A.R.S. §§ 15–816 and 15–816.01(A). The open enrollment policy contains no limitations other than that schools shall not charge tuition. The transfer rule does not contravene open enrollment policy.

¶ 15 Finding that the transfer rule does not violate the legislature's open enrollment policy, we also reject Parker's claim that the transfer rule violates the separation of powers provision of Arizona's constitution. *See* Ariz. Const. art. 3. The separation of powers doctrine "mandates that each department act with the powers and functions properly belonging to it and that it not encroach on the power and functions delegated to the other departments." *State v. Ramsey*, 171 Ariz. 409, 412, 831 P.2d 408, 411 (App.1992). However, "more than one department may have a legitimate and constitutionally permitted involvement in the same area." *Id.* at 413, 831 P.2d at 412. We hold that the AIA bylaws do not prohibit the application of the open enrollment policy and are not an improper encroachment on the legislature's powers.

### III. *Equal Protection*

¶ 16 Parker next argues that, by denying him eligibility under the transfer rule, the AIA violated the equal protection guarantees of the Arizona and United States Constitutions. *See* Ariz. Const. art. 2, § 13; U.S. Const. amend. XIV, § 1. The equal protection clauses of the Arizona and United States Constitutions both "require that all persons subject to state legislation shall be treated alike under similar circumstances." *Crerand v. State*, 176 Ariz. 149, 151, 859 P.2d 772, 774 (App.1993). Parker argues for the first time in his Reply Brief that the transfer rule should be subject to strict scrutiny, rather than subject to the rational basis test. Arguments raised for the first time in a reply brief are not generally considered. *See*

---

**3.** Indeed, Parker refers to failed proposed legisla-    tion doing just that.

*United Bank v. Mesa N.O. Nelson Co.,* 121 Ariz. 438, 443, 590 P.2d 1384, 1389 (1979); *Muchesko v. Muchesko,* 191 Ariz. 265, 268, 955 P.2d 21, 24 (App.1997). Furthermore, the transfer rule does not burden a fundamental right or a suspect class. If a classification does not involve a suspect class or a fundamental right, courts "generally apply the rational basis test and uphold the statute provided it is rationally and reasonably related to furthering some legitimate governmental interest." *Crerand,* 176 Ariz. at 152, 859 P.2d at 775. As stated, there is no fundamental right to participate in interscholastic athletics. It appears that many courts considering this issue have also applied a rational basis analysis. *See, e.g., Quimby,* 10 Ariz. App. at 72, 455 P.2d at 1022; *Niles v. Univ. Interscholastic League,* 715 F.2d 1027, 1031 (5th Cir.1983); *Robbins v. Indiana High Sch. Athletic Ass'n,* 941 F.Supp. 786, 792 (S.D.Ind.1996); *Steffes,* 222 Cal.Rptr. at 361; *Indiana High Sch. Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 236 (Ind.1997); *Bruce v. S. Carolina High Sch. League,* 258 S.C. 546, 189 S.E.2d 817, 819 (1972). Because Parker is not a member of a suspect class, nor has he been deprived of a fundamental right, the rational basis test is the appropriate test to determine whether the transfer rule violated Parker's equal protection rights.

¶ 17 Our supreme court has set forth the following description of the rational basis test:

> [The rational basis test] upholds legislative regulation which imposes burdens on one class but not another so long as (1) the court can find some legitimate state interest to be served by the legislation and (2) the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest. Under this "rational basis" test the constitutional requirement of equal protection is violated "only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." In applying this test, the courts accept the legislative determination of relevancy so long as it is reasonable, even though it may be disputed, debatable or opposed by strong contrary arguments.

*Kenyon v. Hammer,* 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (citations omitted).

¶ 18 In *Quimby,* Division Two of this Court considered an AIA rule that made a student athlete ineligible for one year if he was not living with his parents or a guardian, as defined in the AIA bylaws. 10 Ariz.App. at 71, 455 P.2d at 1021. *Quimby* held that the rule did not violate the student's equal protection rights because the rule was rationally related to the AIA's legitimate purpose of prohibiting coaches from recruiting student athletes and prohibiting students from shopping among schools. *Id.* at 72, 455 P.2d at 1022. Parker argues that *Quimby* does not control because it does not address the AIA rule specifically at issue here and because the open enrollment statutes were subsequently passed. Although *Quimby* does not specifically address this transfer rule, the open enrollment statutes do not create a fundamental constitutional right to participate in interscholastic athletics. Therefore, as in *Quimby,* the rational basis analysis applies.

¶ 19 Parker argues that the application of the transfer rule to a student whose transfer was not athletically motivated is not rationally related to the purpose of the transfer rule and, therefore, violates equal protection. Parker cites three cases which have held that similar transfer rules violated equal protection because they were overbroad. In *Sullivan v. University Interscholastic League,* 616 S.W.2d 170, 173 (Tex.1981), the Texas Supreme Court found the purpose of a similar transfer rule, to discourage recruitment of high school athletes, was a legitimate state purpose, but held that the transfer rule did not rationally relate to that purpose because it was overbroad. The court found the rule overbroad because it burdened many athletes who transferred for non-athletic reasons. *Id.* The court held equal protection required that "the classification must include all those similarly situated with respect to purpose." *Id.* The court found that it affected students who were not similarly situated as to purpose because it applied equally to students whose transfers were not athletically motivated. *Id.*

¶ 20 The transfer rule in *Sullivan,* however, is distinguishable from the one in the present case. In *Sullivan* the transfer rule made no exception for students who were forced to move because their families moved for employment or other reasons. 616 S.W.2d at 173. The AIA transfer rule makes an exception for students who move with their families. Therefore, the AIA transfer rule does not sweep as broadly as the transfer rule in *Sullivan.*

¶ 21 *Sturrup v. Mahan,* 261 Ind. 463, 305 N.E.2d 877 (1974), also held that a similar transfer rule violated equal protection because it was overbroad. The court concluded that the rule was overbroad because it included students whose transfers were not athletically motivated. *Id.* at 881. The court held that to include the students under the transfer rule did not further the legitimate purpose of preventing recruiting and athletically motivated transfers. *Id.* Similarly, *Anderson* concluded that a transfer rule was overbroad when applied to a student who transfers for legitimate, non-athletic reasons and that such application did not further the purpose of preventing recruiting and athletically motivated transfers. 699 F.Supp. at 730. However, the court had concluded that it lacked subject matter jurisdiction; therefore, the entire discussion of the overbreadth of the transfer rule was dicta. *Id.* at 728.

¶ 22 In a subsequent case, the Indiana Supreme Court rejected the inclusion of an overbreadth factor in the equal protection analysis found in *Sturrup. Indiana High Sch. Athletic Ass'n,* 694 N.E.2d at 239. In *Indiana High School Athletic Ass'n,* the plaintiff transferred high schools for purely academic reasons. *Id.* at 226. Under Indiana's transfer rule he was not allowed to participate in varsity athletics for one year. *Id.* at 226 & n. 2. The Indiana Supreme Court held that the transfer rule did not violate the plaintiff's equal protection rights. *Id.* at 236–39. Although the court did not include an overbreadth factor in its equal protection analysis, the court did hold that the transfer rule was not overbroad. *Id.* at 233 & n. 15. The court concluded that while the rule would deny eligibility to some students who transfer for non-athletic reasons,

"conducting a factual inquiry into the motivation for every transfer would impose a considerable burden on both the [Indiana High School Athletic Association] and its member schools." *Id.* at 233.

¶ 23 The purpose of the AIA transfer rule is to deter athletically motivated transfers and recruitment of students and promote "the educational philosophy that participation in athletics is a privilege which should not take a dominant role over academics." We conclude that these are legitimate purposes and that the transfer rule reasonably furthers these goals. By establishing objective eligibility standards, the transfer rule acts to deter athletically motivated transfers. Additionally, the objective standard is reasonable because conducting a factual inquiry into the motivation for every transfer is not possible given the AIA's resources. *See Carlberg,* 694 N.E.2d at 233. Thus, even though the rule, at times, may encompass students who transfer for non-athletic reasons, it is not irrational because it is apparently necessary given the limited resources of the AIA and the volume of transfers that would have to be individually examined. *See State v. Hammonds,* 192 Ariz. 528, 532, 968 P.2d 601, 605 (App.1998) ("[A] statute offends equal protection only if it is 'wholly irrelevant' to the achievement of a legitimate governmental objective.").

¶ 24 Our holding is in accord with the majority of jurisdictions, which have expressly held that similar transfer rules do not violate equal protection rights. *See Niles,* 715 F.2d at 1031 (finding that the transfer rule is rationally related to a legitimate state interest in equalizing competition); *Robbins,* 941 F.Supp. at 792 (holding that the transfer rule is not "irrational" even though it "catches some non-athletically motivated transfers in the net constructed to stop only athletically motivated transfers"); *Steffes,* 222 Cal.Rptr. at 361; *Carlberg,* 694 N.E.2d at 236–39 (citing numerous additional cases); *Bruce,* 189 S.E.2d at 819 (finding that individual determinations would not be possible and that the objective transfer rule is reasonably related to the legitimate goal of eliminating recruiting of students); Don F. Vaccaro, Annotation, *Validity of Regulation of*

**50**

*Athletic Eligibility of Students Voluntarily Transferring From One School to Another*, 15 A.L.R.4th 885, 1982 WL 198668 (1982).

### IV. *Restitution Rule*

¶ 25 The final judgment found the AIA restitution rule unconstitutional and enjoined the AIA from enforcing the restitution rule against DVHS and members of its basketball teams based upon Parker's participation in accordance with the court's interlocutory stay order. The AIA has not appealed that ruling. However, Parker asks this Court to review this ruling.

¶ 26 Parker contends that, like the validity of the transfer rule, the constitutionality of the restitution rule is also an issue of public importance that is capable of repetition, yet evading review. In this case, however, the AIA could have appealed from the order enjoining the enforcement of the rule. We decline to address the constitutionality of the restitution rule.

¶ 27 In order for this Court to have jurisdiction over the appeal, "the party seeking appeal must be aggrieved by the judgment from which the appeal is taken." *Truck Ins. Exch. v. State Comp. Fund*, 138 Ariz. 116, 117, 673 P.2d 314, 315 (App.1983). The portion of the judgment enjoining enforcement of the restitution rule is a judgment in Parker's favor. He is not aggrieved by the ruling he is appealing. Therefore, we do not have jurisdiction over Parker's appeal of that ruling. *See id.;* ARCAP 1 ("An appeal may be taken by any party aggrieved by the judgment.").

¶ 28 Finally, Parker's reliance on Rule 13(b)(3) of the Arizona Rules of Civil Appellate Procedure is misplaced. Rule 13(b)(3) allows *appellees* to raise cross issues in an answering brief without the need to file a cross-appeal. *See Davis v. Cessna Aircraft Corp.*, 182 Ariz. 26, 37, 893 P.2d 26, 37 (App. 1994). Review of the trial court's judgment on the restitution rule would require a cross-appeal by the AIA, the aggrieved party, because a ruling upholding the restitution rule would enlarge the AIA's rights and lessen Parker's rights.

### CONCLUSION

¶ 29 We affirm the trial court's judgment finding that the AIA transfer rule does not conflict with Arizona's open enrollment statutes and does not violate the Equal Protection Clauses of the Arizona and United States Constitutions. We decline to address the constitutionality of the AIA restitution rule because that issue was decided in favor of Parker and was, therefore, not properly raised by his appeal. We deny Parker's request for costs because he has cited no authority supporting his request.

CONCURRING: PHILIP HALL, Presiding Judge and E.G. NOYES, JR., Judge.